UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

In Re ProShares Trust Securities Litigation

———————————————————

)
)
)
)
)
)
)
)
)

Master Case No. 09-cv-6935 (JGK)

ECF Case

**Oral Argument Requested**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  ProShares' Alleged Failure to Disclose that "Investors Could Rapidly Suffer Large Losses" is Not Actionable Under Section 11 ..................................................................................... 1

    A.  Plaintiffs concede that the registration statements made repeated disclosures of the Funds' daily objectives and warned investors of the risks regarding cumulative returns ........................................................................................................ 1

    B.  Plaintiffs' hindsight allegations about the magnitude of the risk of holding ETFs for longer periods cannot establish a material omission ................................................. 4

    C.  Plaintiffs' allegations of an undisclosed "mathematical formula" that determined "must lose" scenarios cannot establish a material omission ......................................... 8

    D.  The inclusion of SEC-mandated disclosures in the registration statements cannot form the basis for Section 11 liability ........................................................................ 10

    E.  Changes to the Funds' disclosures over time do not mean that prior disclosures were inadequate .......................................................................................................... 11

2.  Plaintiffs' Claims Also Fail Because Their Alleged Losses are Not Causally Connected to the Alleged Omissions .................................................................................................... 12

3.  Plaintiffs' Claims for Which They Lack Standing Should be Dismissed ............................ 13

4.  The Claims Against the Additional Defendants are Barred by the Statute of Limitations ........................................................................................................................... 14

5.  The Individual Plaintiffs' Breach of Contract Claim Still Fails to State a Claim ................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Denny v. Barber,
   576 F.2d 465 (2d Cir. 1978)..................................................................................12

Dominguez v. City of New York,
   No. 10 Civ. 2620, 2010 WL 3419677 (E.D.N.Y. Aug. 27, 2010) ..........................15

Greenapple v. Detroit Edison Co.,
   618 F.2d 198 (2d Cir. 1980)..................................................................................12

Halperin v. eBanker USA.COM, Inc.,
   295 F.3d 352 (2d Cir. 2002)..................................................................................11

Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,
   159 F.3d 723 (2d Cir. 1998)....................................................................................6

In re AES Corp. Sec. Litig.,
   825 F.Supp. 578 (S.D.N.Y. 1993)............................................................................7

In re Alliance N. Am. Gov't Income Trust, Inc.,
   No. 95 Civ. 0330, 1997 WL 403486 (S.D.N.Y. July 18, 1997) ................................6

In re Morgan Stanley Info. Fund Sec. Litig.,
   592 F.3d 347 (2d Cir. 2010)....................................................................................6

In re MRU Holdings Secs. Litig.,
   No. 09 Civ. 3807, 2011 WL 650792 (S.D.N.Y. Feb. 17, 2011) ...............................3

In re Nokia Oyj (Nokia Corp.) Secs. Litig.,
   423 F.Supp.2d 364 (S.D.N.Y. 2006)........................................................................7

In re NovaGold Res. Inc. Secs. Litig.,
   629 F.Supp.2d 272 (S.D.N.Y. 2009).....................................................................3, 7

In re State St. Bank and Trust Co. Fixed Income Funds Inv. Litig.,
   No. 08 Civ. 8235, 2011 WL 1206070 (S.D.N.Y. Mar. 31, 2011) (Holwell, J.) ...............12, 13

In re Wachovia Equity Secs. Litig.,
   753 F.Supp.2d 326 (S.D.N.Y. 2011)......................................................................13

Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.,
   620 F.3d 137 (2d Cir. 2010)....................................................................................4

*Krouner v. Am. Heritage Fund, Inc.*,
  899 F.Supp. 142 (S.D.N.Y. 1995).........................................................................12

*Krupski v. Costa Crociere S.p.A.*,
  130 S.Ct. 2485 (2010)................................................................................14, 15

*Lin v. Interactive Brokers Grp., Inc.*,
  574 F.Supp.2d 408 (S.D.N.Y. 2008)......................................................................3

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
  98 F.3d 2 (2d Cir. 1996).........................................................................................7

*R.W. Grand Lodge of F. & A.M. v. Salomon Bros. All Cap Value Fund*,
  No. 08-cv-0038, 2011 WL 2268551 (2d Cir. June 9, 2011)..................................13

*Rafton v. Rydex Series Funds*,
  No. 10 CV-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011)..............7, 8, 13

*Rubin v. MF Global, Ltd.*,
  634 F.Supp.2d 459 (S.D.N.Y. 2009)...................................................................3, 4

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F.Supp. 785 (S.D.N.Y. 1997).........................................................................11

*Vargas v. Ciarletta*,
  No. 09 Civ 8981, 2010 WL 4447636 (S.D.N.Y. Nov. 4, 2010) ...........................14

## OTHER AUTHORITIES

Fed R. Civ. P. 15(c)(1)(C) .........................................................................................14

1.      **ProShares' Alleged Failure to Disclose that "Investors Could Rapidly Suffer Large Losses" is Not Actionable Under Section 11**

Plaintiffs now state their central theory of liability as follows:  "The material facts which Defendants omitted to disclose were that investors could rapidly suffer large losses, even if they were correct in their judgment about the direction of the market, by using Defendants' ETFs." Opp. at 2-3.  But plaintiffs concede that the registration statements repeatedly disclosed the daily nature of the Funds' investment objectives and cautioned that the Funds' cumulative returns for longer periods would *not* meet these objectives due to the effects of compounding, leverage, and volatility.  Thus, ProShares' supposed failure to disclose that "investors could rapidly suffer large losses" is not based on the *types* of risks that came to fruition (all of which were disclosed), but rather on the *magnitude* of those risks – *i.e.,* the size of investors' potential losses and how quickly they could occur in a volatile market.  The Complaint does not state a viable Section 11 claim, however, because these allegations are merely a hindsight assertion that ProShares should have foreseen the extreme level of market volatility in 2008-2009 and should have described in more detail the likely effect of such volatility on cumulative Fund performance over time.  But because the registration statements made ample disclosures regarding the specific risks due to compounding, leverage, and index volatility (as well as numerous warnings that the divergence caused by these risks could be "significant"), ProShares was not required by the securities laws to forecast the specific numerical effect of the extreme volatility that came to pass.  There was no material omission, and the Complaint must be dismissed.

A.      **Plaintiffs concede that the registration statements made repeated disclosures of the Funds' daily objectives and warned investors of the risks regarding cumulative returns**

Plaintiffs concede that ProShares disclosed that the Funds had daily investment objectives.  *See* Opp. at 16.  No reasonable investor could have thought otherwise.  The daily

objective appears on the first page of every registration statement (after the Table of Contents) and appears in the information section for every Fund. The only court to examine ProShares' disclosures noted that ProShares' prospectus made it clear on the first page that the Funds were meant for daily use. *See* Motion, Ex. 6 at 39-44. Even plaintiffs' own descriptions of the Funds describe them as tracking their benchmark "over one day" or "on a daily basis." Opp. at 10. Plaintiffs do not deny that a number of the named plaintiffs used the Funds as daily investments – a fact established by the exhibits to the Complaint – which plainly indicates that they understood the Funds' daily nature. *See* Motion at 19-20. Moreover, the Funds met their daily objectives; nowhere have plaintiffs alleged or even suggested that the Funds did not perform exactly as ProShares said they would on a daily basis.

Plaintiffs also do not deny that ProShares' registration statements contained explicit disclosures stating that the Funds would *not* track their benchmarks on a cumulative basis for longer periods. As detailed in the Motion, the disclosures repeatedly stated that "[t]he Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results." Motion at 10; *see also* Appendix A at 2.A-L; Appendix B at 2.A-F. ProShares stated that "for periods greater than one day, investors should not expect the return of the Fund to be twice the return of the underlying index," and it also warned that the cumulative percentage increase or decrease in the NAV of the Fund could "diverge significantly" from the cumulative percentage increase or decrease in the performance of the benchmark due to the combined factors of compounding, leverage, and volatility. Motion at 10-13; *see also* Appendix A at 3.A-5.F; Appendix B at 3.A-5.F. ProShares also specifically showed that increased index volatility would increase the likelihood that its Funds would underperform significantly, including the possibility of results in

the *opposite direction* in periods of high volatility.  *See* Motion at 12-13; Appendix A at 5.A-F;

Appendix B at 5.A-F.  Plaintiffs do not point to a single disclosure which claims or even

suggests that the Funds would achieve their objectives for periods longer than one day.

These uncontradicted disclosures provide more than sufficient basis to dismiss plaintiffs'

claims.  Plaintiffs assert that materiality determinations should not be made on a motion to

dismiss; but when, as here, the relevant risks have plainly been disclosed, omissions of the kind

that plaintiffs allege are immaterial as a matter of law.  *See, e.g.*, *Lin v. Interactive Brokers Grp.,*

*Inc.*, 574 F.Supp.2d 408, 416-19 (S.D.N.Y. 2008) ("[I]f the alleged omission . . . is explicitly

addressed in the risk disclosures . . . it is immaterial."); *In re MRU Holdings Secs. Litig.*, No. 09

Civ. 3807, 2011 WL 650792 at *8 (S.D.N.Y. Feb. 17, 2011).  Plaintiffs assert that these

disclosures do not defeat their claims because the registration statement does not refer to the

"specific" risk that led to plaintiffs' losses.  *See* Opp. at 5 & n.5.  But this argument is incorrect

and plaintiffs' authority is inapposite, because the multiple disclosures detailed in the Motion and

Appendices do address the "specific" risk upon which plaintiffs base their case – the risk that the

Funds' cumulative returns will not match the Funds' stated objectives when held for periods

longer than a day.  *See, e.g.*, *In re NovaGold Res. Inc. Secs. Litig.*, 629 F.Supp.2d 272, 294

(S.D.N.Y. 2009) (rejecting argument that cautionary language did not warn of the "specific"

event, noting that "[t]he Registration Statement need not predict all of the details of the

contingency that came to pass. . . .  Such an approach would be impractical.").[1]

---

[1] Perhaps concerned about the legal merits of their position, plaintiffs resort to a peculiar
argument – that ProShares has a "significant social responsibility" not to ask the Court to dismiss
the Complaint for failure to plead a material omission.  Opp. at 9, 20 n.11.  This plea is
unsupported by any authority and cannot be a substitute for the lack of supportable allegations.
Plaintiffs further assert incorrectly that one of ProShares' cited authorities, *Rubin v. MF Global,*
*Ltd.*, 634 F.Supp.2d 459 (S.D.N.Y. 2009), was vacated by the Second Circuit on the ground that
"generalized statements that do not warn of specific risks" are insufficient for dismissal at the

**B.      Plaintiffs' hindsight allegations about the magnitude of the risk of holding ETFs for longer periods cannot establish a material omission**

Even though investors were told that the combined effect of compounding, leverage and volatility could lead to a divergence between the Funds' cumulative returns and the benchmark for periods longer than a day, plaintiffs claim that they were not told how large the divergence could be or how quickly it could occur.  Significantly, plaintiffs nowhere assert that their investment losses resulted from a *type* of risk that was not discussed in the registration statements.  The allegedly material omissions are thus entirely a matter of *degree – i.e.*, "that investors could *rapidly* suffer *large* losses."  Opp. at 2-3.  In the Complaint, plaintiffs sought to illustrate the supposedly undisclosed magnitude of this risk with many pages of graphs showing divergence between what plaintiffs dub the "anticipated" cumulative returns for the ETFs and the "actual" cumulative returns achieved for selected time periods.  *See, e.g.*, Complt. ¶¶ 137-147; 149-153; 160-163; 175-176.  ProShares demonstrated that these graphs were based on cherry-picked time periods of extreme volatility bearing no relationship to when the plaintiffs actually invested in the Funds.  *See* Motion at 24-27.  And if plaintiffs' carefully selected cut-off dates for these graphs were simply shifted to other dates within the putative class period, the results would be precisely the opposite (illustrating vividly the impracticality of predicting and describing the specific impact of such volatility on cumulative returns).  *See id.*  In the Opposition, plaintiffs

_____

pleading stage.  *See* Opp. at 5 & n.6.  Plaintiffs have misconstrued this authority.  The Second Circuit vacated a portion of the *Rubin* decision after concluding that the district court incorrectly applied the "bespeaks caution" doctrine to an alleged omission of "present or historical fact," rather than to a forward-looking statement.  *See Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 142-44 (2d Cir. 2010).  The distinction between present fact and forward-looking statements (and thus the Second Circuit's partial reversal on this basis) is of no moment in the present case, because ProShares' risk disclosures regarding cumulative returns are plainly forward-looking.  Nothing about the Second Circuit's decision or the facts of *Rubin* brings into question the basic principle for which ProShares cited the *Rubin* decision (among others) – dismissal of a Section 11 claim is proper where the registration statement sufficiently discloses the risks about which the plaintiffs claim to have been misled.

offer no rebuttal to these arguments or any defense of the graphs.  They simply drop the point

and shift their focus instead to lead plaintiff Mark Karasick, who "rapidly suffered in less than 5

months the loss of almost one half of his investment (45%) in Defendants' SRS fund," instead of

the cumulative 10% gain he "should have received."  Opp. at 14.

      Even aside from the fact that Mr. Karasick and other investors were specifically told that

they "should not expect" their cumulative returns to track the benchmark over time, the potential

magnitude of such divergence due to compounding, leverage, and volatility was more than

adequately disclosed in the Funds' registration statements.  Every registration statement warned

investors that the cumulative percentage decrease or increase of the Fund could "diverge

significantly" from the cumulative percentage increase or decrease of the benchmark due to

compounding.  *See, e.g.*, Motion at 27-28, Appendix A at 3; Appendix B at 3.  The registration

statements also warned investors that leveraged funds (like Mr. Karasick's SRS investment)

were particularly susceptible to such a divergence.  *See* Appendix A at 4; Appendix B at 4.[2]

Beginning in 2007 (well before the onset of the extreme volatility of 2008-2009), ProShares

added a further caution in the form of "wedge" graphs (an example of which is attached hereto as

Exhibit A for reference) which showed how index volatility could amplify the effects of

compounding and leverage.  *See* Motion at 12-13; Appendix A at 5; Appendix B at 5.  These

---

[2]  Plaintiffs' only response is to focus on one set of graphs that show a relatively small
divergence in cumulative returns and thus to assert that ProShares implied to investors that only
a small divergence was possible.  *See* Opp. at 17-18, 22.  As explained in the Motion (and
ignored in the Opposition), these graphs simply provide examples of one possible divergence.
ProShares explicitly warned that more "significant" divergences were also possible.  The
language accompanying these graphs clearly tells the investor that these illustrations are based
on one set of assumptions, including one stable volatility level.  The next sentence directs the
investor to the Statement of Additional Information ("SAI") for more information about how
volatility changes would affect the amount of divergence.  *See, e.g.*, 9/28/07 RS at 8-9.  There,
the registration statement shows explicitly that the divergence can range widely (including
divergences of over 40% and divergences going in the opposite direction from the "expected"
return).  *See, e.g.*, *id*. at SAI 18-20; Appendix A at 5; Appendix B at 5.

graphs illustrated quantitatively how the Funds' cumulative returns could diverge significantly from their respective benchmarks and even trend in the opposite direction during periods of high volatility.  *Id.*  For example, like all investors, Mr. Karasick was warned that he should not "expect" his UltraShort ETF to gain 10% over time if its benchmark lost 5%, as he could instead lose 31.4% if index volatility reached 40%.  *See, e.g.*, Ex. A; 9/28/07 RS at SAI 20 (graph 3).[3]  The fact that the volatility levels in 2008-2009 ultimately exceeded the 40% used in the wedge graph illustration – and that Mr. Karasick's investment allegedly declined 45% rather than the 31.4% shown in the illustration – provides absolutely no basis for a claim of material omission.[4]

Plaintiffs attempt to discredit the warnings of a potentially "significant" divergence of cumulative returns, but they fail to show how any reasonable investor could be misled.  For example, plaintiffs complain that the wedge graph illustrations reflected volatility assumptions "only" up to 40% (a substantial level in any normal market conditions).  But plaintiffs do not say how the inclusion of higher volatility levels would materially alter the total mix of information available.  As plaintiffs must concede, the wedge graphs depict that "opposite direction"

---

[3] ProShares included separate "wedge" graphs for each type of ETF at issue in this case.  These graphs specifically showed that the potential divergence could be more severe in UltraShort Funds than in the other two types, clearly disproving plaintiffs' assertion (*see, e.g.*, Opp. at 9-10) that ProShares never disclosed this risk.  *See, e.g.*, Appendix A at 5.A.

[4] Plaintiffs argue that the disclosures contained in the SAI rather than the prospectus are entitled to less weight for Section 11 purposes.  This is flatly incorrect, as courts routinely look to SAIs and documents incorporated by reference therein.  *See* Motion at 19 (citing authority); *In re Alliance N. Am. Gov't Income Trust, Inc.*, No. 95 Civ. 0330, 1997 WL 403486 at *3 (S.D.N.Y. July 18, 1997) (*rev'd in part on other grounds*, 159 F.3d 723 (2d Cir. 1998)) (rejecting Section 11 claim because risks were fully disclosed in SAI); *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730-31 (2d Cir. 1998).  The SAI is attached to the prospectus on both ProShares' and the SEC's websites.  The SEC considers an SAI which has been incorporated by reference to be part of the prospectus as a matter of law.  *See* Motion at 19 n.12.  Plaintiffs' own definition of the registration statement includes the SAI.  Complt. p. 61 n.2.  The only authority cited by plaintiffs on this point is inapposite.  In *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010), the court does not say that disclosures have to be in a certain place; it merely notes that the SEC itself has said its General Instructions "are not an independent source of disclosure obligations."  *Id.* at 361.

movements can start at 20% volatility and can grow more severe as volatility increases.  *See, e.g.*, Ex. A; Appendix A at 5.A (graph 3).  Plaintiffs cannot credibly assert that a reasonable investor would fail to understand the same risk to apply (and indeed be magnified) if volatility exceeded 40%.  The graphs displayed visually (for a large range of assumptions) what ProShares repeatedly disclosed textually:  that cumulative returns can diverge significantly from the benchmark over time, and the divergence will be larger with increased index volatility.  *See In re Nokia Oyj (Nokia Corp.) Secs. Litig.,* 423 F.Supp.2d 364, 397 (S.D.N.Y. 2006) ("[I]nvestors are presumed to have the ability to be able to digest varying reports and data.").

Fundamentally, plaintiffs cannot establish a material omission by asserting that ProShares' risk disclosures must specify exactly how a given risk would come to fruition.  It is well established that "when defendants warn investors of a potential risk, they need not predict the precise manner in which the risks will manifest themselves." *In re AES Corp. Secs. Litig.*, 825 F.Supp. 578, 588 (S.D.N.Y. 1993); *accord In re NovaGold Resources Inc. Secs. Litig.*, 629 F.Supp.2d at 294; *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 7 (2d Cir. 1996).  This rule has particular force here, where the risks were realized only because of the extreme financial crisis of 2008-2009.

Plaintiffs rely on a recent decision, *Rafton v. Rydex Series Funds*, No. 10 Civ. 01171, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011), in which the court denied a motion to dismiss a prospectus liability case regarding a fund with daily "inverse" return objectives.  *Rafton* is readily distinguishable from the present case, however, because the decision in *Rafton* hinged on two features of the Rydex fund that are not present here.  First, with respect to the fund's disclosures regarding cumulative returns, the *Rafton* court concluded that Rydex "only made a general statement that 'tracking error' is 'possible' or 'may' occur." *Id.* at *7.  By contrast, the

ProShares disclosures on this point did not use such conditional or equivocal language.[5]  Second, the Rydex fund charged investors an extra fee if they sold their shares less than a year or eighteen months after purchasing them.  Thus, the court found that the complaint adequately alleged that this "discouraged investors from selling shares over the shorter term."  *Id.*  No such fee applies to any of the ProShares Funds, and plaintiffs do not suggest otherwise; indeed, as reflected in the exhibits to the Complaint and discussed in the Motion, several named plaintiffs engaged in very short-turnaround purchases and sales of Fund shares.  Accordingly, the reasoning of *Rafton* has no application here.

C.    **Plaintiffs' allegations of an undisclosed "mathematical formula" that determined "must lose" scenarios cannot establish a material omission**

In an effort to mask the hindsight nature of their theory – *i.e.*, the supposed failure to disclose the size and timing of potential investor losses – plaintiffs assert that ProShares *knew* that investors in fact *would* suffer losses, and further knew *when* it would happen.  *See* Opp. at 28-29.  According to plaintiffs, the source of ProShares' remarkable clairvoyance is an "undisclosed mathematical formula pursuant to which Defendants operated their new ETFs," which "told Defendants, to the day, when such large losses would begin if the excess index volatility did not subside."  Opp. at 3.[6]  The Complaint asserts that the formula itself should have

---

[5]  *See* 12/29/06 RS at 313 ("The Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results."); *id.* at 7 ("Consequently, for periods greater than one day, investors should not expect the return of the Fund to be twice the return of the underlying Index."); *id.* at 318 ("Therefore, the return of the index over a period of time greater than one day . . . will not generally equal a Fund's performance over that same period.").

[6]  Plaintiffs offer nothing more than conclusory assertions that ProShares was aware of this formula and "operated" the Funds "pursuant" to it.  As disclosed in the registration statements, ProShares operated the Funds by using a variety of leveraging techniques to attempt to achieve the daily objective of the fund in question.  The "formula" that plaintiffs tout is merely *descriptive*: it purports to approximate the cumulative results of ProShares' strategy, assuming one knows the holding period, index return, and annualized volatility of the index.  ProShares

been disclosed in the Funds' registration statements. *See* Complt. ¶¶ 112-126.  The Motion explained why it is nonsensical to suggest that a reasonable investor required inclusion of a complex quadratic formula (requiring multiple variables as inputs) to understand the risks of investing in the Funds. *See* Motion at 30-33.  The Opposition does not press this point, and plaintiffs appear to have backed off this assertion.  Instead, plaintiffs now say that the formula gave ProShares firm knowledge of the size and timing of investors' potential losses and ProShares should have disclosed this information in advance. *See* Opp. at 29 ("Defendants did not need hindsight.  Their mathematical formula gave them full knowledge.").

But even taking as true the Complaint's allegations about how the "formula" works, it would simply be impossible for ProShares or anyone else to divine an investor's cumulative returns in advance – because the formula's inputs require knowledge not only of the actual period for which the investment is held, but also of the actual benchmark index return and annualized index volatility *during that holding period*.  It is not possible to know these data points in advance and thus to estimate cumulative returns; the formula is by definition backward-looking.  Plaintiffs assert in the Opposition that ProShares was aware of the escalating market volatility as of June 2008 while it was occurring, and thus should have warned investors what the "mathematical formula" revealed about the "immediate likelihood" of negative cumulative returns – *i.e.*, that they were in a "must lose" situation. *See* Opp. at 9.  As demonstrated in the Motion, however, increased volatility did not create a "must lose" situation, because investments during certain very volatile portions of the class period would have yielded *higher* than "expected" returns, depending on when the holding period began and ended. *See* Motion at 26-

---

obviously controls none of these factors, and thus cannot conceivably use such a formula to make investment decisions or otherwise manage its funds.

27, 32.[7]  In light of the inherent uncertainty in how a particular holding would be affected over time by the growing volatility, the actual disclosures were entirely appropriate – they explained both textually and graphically that cumulative returns could diverge significantly from the benchmark, in a positive or negative direction.  And the Funds' annual report dated May 31, 2008 notified shareholders of the increasing volatility, and again reminded investors of the potential effect on returns:  "[d]aily volatility for the U.S. equity markets increased from a year ago. . . .  At a given index return level, increased volatility tends to negatively impact performance over time."  5/31/08 N-CSR at 6.

> **D.**  **The inclusion of SEC-mandated disclosures in the registration statements cannot form the basis for Section 11 liability**

Plaintiffs argue that ProShares "encouraged investors to invest in ProShares' ETFs for extended periods" by including in the registration statements fee and return examples for one-year and longer periods.  *See* Opp. at 15-16, 21-22.  Plaintiffs do not dispute that (i) the SEC requires that such information be included in fund registration statements and (ii) ProShares cannot be held liable for including SEC-mandated information.  *See* Motion at 21-22.  Plaintiffs' only response is that, by including the mandated examples without *explaining* that they were required by SEC rules, ProShares somehow "enticed Plaintiffs to use Defendants' ETFs for periods longer than a single day."  Opp. at 22.  This unsupported assertion is entirely conclusory, and plaintiffs cite to no rule or authority requiring such a disclosure or suggesting liability for failure to do so.  Moreover, even if the SEC did not require this annualized information, plaintiffs do not explain why a reasonable investor would assume that the mere publication of

---

[7]  Indeed, plaintiffs' assertion of a guaranteed "must lose" scenario based on index volatility alone is facially illogical.  Even assuming the alleged formula is accurate, index volatility is only one factor in estimating cumulative returns.  The size and direction of any divergence would necessarily also depend on, among other things, the length of time a fund was held and the performance of its benchmark.

such information was a green light to ignore the explicit warnings made throughout the

registration statements.  *See* Motion at 22-23.  Because of these repeated warnings, any

illustrations of potential annual returns cannot be read as even an implicit assurance of actual

cumulative returns.  *See, e.g.*, *Schoenhaut v. Am. Sensors, Inc.*, 986 F.Supp. 785, 793 (S.D.N.Y.

1997) ("[T]he challenged statements . . . were surrounded by express cautionary language

addressing the substance of the challenged statements."); *Halperin v. eBanker USA.COM, Inc.*,

295 F.3d 352, 357 (2d Cir. 2002).

       **E.**     **Changes to the Funds' disclosures over time do not mean that prior**
                **disclosures were inadequate**

Plaintiffs also argue that the 2009 post-class period enhancements to the registration

statement somehow show that the class period disclosures were not adequate.  *See, e.g.*, Opp. at.

7 & n.8.  As shown in Appendices A and B to the Motion, ProShares disclosed similar risks

throughout the class period, and the language used to describe these risks was continually

reviewed and occasionally enhanced during the class period, as well as after it – as is typical of

any mutual fund registration statement.  The fact that the 2009 disclosures included some

*additional* language regarding the same risks that had already been disclosed in the prior versions

does not establish that the prior disclosures were inadequate.  For example, plaintiffs insist that

"it was only after the Class Period that Defendants began to acknowledge that: '[compounding]

becomes more pronounced as volatility increases . . .'".  Opp. at 19 (alterations in original).  But

this very point *had* been highlighted earlier, during the putative class period.  In addition to the

"wedge" graphs that were added in September 2007 and which starkly illustrated the effect of

volatility, the Funds' annual report dated May 31, 2008 explained that equity market price

volatility had increased over the preceding year, and stated that "periods of higher index

volatility will cause the effect of compounding to be more pronounced, while periods of lower

index volatility will produce a more muted or even positive effect."  5/31/08 N-CSR at 2, 6.

And, as demonstrated above and in the Motion, even before the specific effect of volatility on

compounding was separately discussed in the disclosures, every registration statement in the

class period clearly stated the main point – that the Funds did not seek to meet their return

objectives for periods longer than a day, "because mathematical compounding prevents the

Funds from achieving such results" and thus investors "should not expect" that outcome.  Motion

at 10-11.

      As the world well knows, the increasing market volatility of early 2008 later blossomed

into the full-fledged financial market collapse in late 2008 and early 2009.  The fact that

ProShares added further to its disclosures concerning the effect of volatility cannot be surprising,

and can hardly be faulted.  Any suggestion that ProShares was "fixing the sidewalk" is blatant

hindsight pleading.  *See, e.g.*, *Greenapple v. Detroit Edison Co.*, 618 F.2d 198, 211 (2d Cir.

1980) (noting that even if plaintiff was correct that "the quality of the disclosure could have been

improved . . . the advisability of revision does not render what was done deceptive or

misleading"); *Krouner v. Am. Heritage Fund, Inc.*, 899 F.Supp. 142, 147 (S.D.N.Y. 1995);

*Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

**2.      Plaintiffs' Claims Also Fail Because Their Alleged Losses are Not Causally
Connected to the Alleged Omissions**

      The Complaint also fails for a second, independently sufficient reason:  any material

omissions that plaintiffs might establish cannot have caused plaintiffs' claimed investment

losses.  The causation arguments set forth in the Motion were recently embraced fully in an

analogous case in this District, resulting in the dismissal of a Section 11 complaint against a

mutual fund and its adviser and trustees.  In *In re State St. Bank and Trust Co. Fixed Income

Funds Inv. Litig.*, No. 08 Civ. 8235, 2011 WL 1206070 (S.D.N.Y. Mar. 31, 2011) (Holwell, J.),

the plaintiffs alleged that a mutual fund prospectus misrepresented the nature, extent, and potential consequences of the fund's investments in mortgage-related securities.  In dismissing these claims with prejudice, Judge Holwell reasoned that the alleged misstatements or omissions could not have caused the plaintiffs' alleged investment losses because the price of mutual fund shares is determined by the fund's net asset value ("NAV") – and thus the share price cannot be inflated by allegedly concealed information about the risks of investing in the fund.  *Id.* at *9-10. Judge Holwell considered and expressly rejected the *Charles Schwab* and *Rydex* cases from the Northern District of California, relied upon by plaintiffs.  *Id.* at *6-9.  Plaintiffs do not dispute that the share prices of ProShares' ETFs also track the Funds' NAV (Motion at 7), and thus the reasoning of the *State Street* decision applies with equal force to this case.  *See also R.W. Grand Lodge of F. v. Salomon Bros. All Cap Value Fund*, No. 08-cv-0038, 2011 WL 2268551, at *2 (2d Cir. June 9, 2011) (summary order) (affirming dismissal of Section 11 claims because any omissions could not have proximately caused a decline in the value of the mutual fund shares).

**3.      Plaintiffs' Claims for Which They Lack Standing Should be Dismissed**

Even if plaintiffs are allowed to correct all their "administrative oversight[s]" (Opp. at 34 n.16) and omitted verifications, the named plaintiffs still did not purchase shares of all the Funds or pursuant to all the registration statements named in the Complaint.  Plaintiffs concede that the Court may dismiss those claims relating to funds that no plaintiff owns.  *See, e.g.*, Motion at 36-37; *In re Wachovia Equity Secs. Litig.*, 753 F.Supp.2d 326, 368-370 (S.D.N.Y. 2011).[8]  Given the procedural history of this case, ProShares respectfully submits that immediate dismissal is appropriate as plaintiffs have already had the opportunity to correct their deficiencies in standing.

---

[8]  The cases cited in the Motion, at pages 36-37, and the *Wachovia* case cited here also reject plaintiffs' argument that they should be deemed to have standing for the missing Funds based on purchasing shares pursuant to similar registration statements.

At the very latest, ProShares' original Motion to Dismiss (filed November 15, 2010) notified plaintiffs of the standing deficiencies in their Complaint.  Plaintiffs' new Complaint added many new named plaintiffs, presumably in an attempt to address the standing deficiencies.  Plaintiffs should not get yet another chance to fix the remaining defects.[9]

**4.      The Claims Against the Additional Defendants are Barred by the Statute of Limitations**

Plaintiffs argue that their claims against ProShares Trust II and Messrs. Karpowicz, Seale, and Todd ("New Defendants") are not time-barred, relying upon a provision of Rule 15 that allows for relation back of an amendment that "changes the party or the naming of a party against whom a claim is asserted."  Fed R. Civ. P. 15(c)(1)(C); Opp. at 35-36.  But these plaintiffs are not seeking to correct an inadvertent misspelling or misidentification of a party named in the original complaint.  All the parties in the original complaints are still named in the current pleading – and plaintiffs seek to add new defendants who were not in the original complaints because plaintiffs had not made sufficient effort to learn their identities earlier.  Even after the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485 (2010), cited by plaintiffs, courts within the Second Circuit have noted that "defendants who were not named due to plaintiff's lack of knowledge of their identities are not 'mistaken' parties . . .". *Vargas v. Ciarletta*, No. 09 Civ. 8981, 2010 WL 4447636, at *2 (S.D.N.Y. Nov. 4, 2010) (noting that plaintiff's amendment could not relate back "because he did not [make] a mistake in identifying any party.  Rather, he seeks to add 'new names . . . to correct a lack of knowledge.'")

---

[9]  Plaintiffs themselves state the named plaintiffs bought only 38 of 44 funds (even assuming plaintiffs' "corrections" are allowed).  Opp. at 34.  They also concede that the named plaintiff in the SZK Fund did not suffer any losses and thus does not have standing either.  Plaintiffs attempt to add the March 26, 2009 and June 1, 2009 registration statements to the list of relevant statements, but those are merely "sticker" statements that contain no relevant disclosures at all. *See* Ex. 10.  Finally, plaintiffs claim to have standing for the UGL fund through Douglas Jones, yet still fail to submit proof that his trades were in the class period.

14

(quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)); *accord*

*Dominguez v. City of New York*, No. 10 Civ. 2620, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27,

2010) (noting that *Krupski* assumes the presence of a mistake and that *Barrow*'s holding that a

lack of knowledge is not a mistake is "still intact").  As such, plaintiffs' claims against the New

Defendants are barred, as they were brought well after the statute of limitations had expired.

**5.      The Individual Plaintiffs' Breach of Contract Claim Still Fails to State a Claim**

        In defense of their breach of contract claim, the Schnalls merely restate their basic

allegations and assert conclusorily that they have done enough to survive a motion to dismiss.

*See* Opp. at 37-38.  Plaintiffs make no effort to respond to the substance of the arguments set

forth in ProShares' Motion, nor do they show how the Funds' registration statement could stand

as a "promise" that the SRS Fund would meet its investment objectives for periods longer than a

day when this very document features clear and repeated disclosures regarding the daily nature

of the SRS Fund's objectives and that investors "should not expect" their cumulative returns to

track those of the benchmark for longer than a day.  *See* Motion at 39-40.  This claim must

therefore be dismissed for the same reasons as the class plaintiffs' securities law claims.

Dated:  June 15, 2011                          Respectfully submitted,

                                               ROPES & GRAY LLP

                                               By: /s/ Robert A. Skinner
                                               Robert A. Skinner
                                               Prudential Tower
                                               800 Boylston Street
                                               Boston, MA  02199
                                               Tel: (617) 951-7000
                                               Fax: (617) 951-7050
                                               robert.skinner@ropesgray.com

                                               *Attorneys for defendants ProShares Trust,*
                                               *ProShares Trust II, ProShare Advisors LLC, SEI*
                                               *Investments Distribution Co., Michael Sapir, Louis*
                                               *Mayberg, Edward Karpowicz, William Seale,*
                                               *Ph.D., Simon Collier and Charles Todd*

15

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Arthur H. Aufses III
Arthur H. Aufses III
1177 Avenue of the Americas
New York, NY 10036
Tel: (212) 715-9100
Fax:  (212) 715-8000
aaufses@kramerlevin.com

*Attorneys for defendants Russell Reynolds and
Michael Wachs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2010, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the ECF system.

<u>/s/ Robert A. Skinner</u>
Robert A. Skinner

17