UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | Master Case No. 09-cv-6935 (JGK) |
| In Re ProShares Trust Securities Litigation ) | |
| ) | ECF Case |
| ) | |
| ) | |
| ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR AWARD OF ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ..........................................................................................................................4

A.    Plaintiffs' Claims Are Contradicted by ProShares' "Plain English" Disclosures ..............4

B.    Plaintiffs Cannot Avoid the Plain Language of the Disclosures by Inventing
      Supposed Disclosure Obligations ........................................................................8

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Healey v. Chelsea Res., Ltd.*,
  947 F. 2d 611 (2d Cir. 1991)..................................................................................4, 7

*In re Direxion Shares ETF Trust*,
  No. 09-cv-8011, ECF No. 170, at 2 (S.D.N.Y. Nov. 8, 2012)..................................6

*In re ProShares Trust Secs. Litig.*,
  889 F. Supp. 2d 644 (S.D.N.Y. 2012) ........................................................... passim

*In re ProShares Trust Secs. Litig.*,
  728 F.3d 96, (2d Cir. 2013)...........................................................................3, 7, 8, 9

*Katz v. Amos Treat & Co.*,
  411 F.2d 1046 (2d Cir. 1969)......................................................................................4

*Lear v. Tierney*,
  No. 07-cv-0176, 2008 WL 2699682 (D. Nev. July 1, 2008) .....................................5

*Rubin v. Long Island Lighting Co.*,
  576 F. Supp. 608 (E.D.N.Y. 1984) ........................................................................5, 9

*Straus v. Holiday Inns, Inc.*,
  460 F. Supp. 729 (S.D.N.Y. 1978)..........................................................................4, 9

*Wielgos v. Commonwealth Edison Co.*,
  123 F.R.D. 299 (N.D. Ill. 1998).................................................................................7

*Zissu v. Bear, Stearns & Co.*,
  805 F.2d 75 (2d Cir. 1986)......................................................................................7, 8

STATUTES

15 U.S.C. § 77k(e) ..........................................................................................................1, 4

Securities Act of 1933........................................................................................... passim

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)........................................................................................................3

Defendants ProShares Trust, ProShares Trust II, ProShare Advisors LLC, SEI Investments Distribution Co., Michael Sapir, Louis Mayberg, Edward Karpowicz, William Seale, Simon Collier, and Charles Todd (collectively, "ProShares"), together with defendants Russell Reynolds and Michael Wachs (the "Independent Trustees"), respectfully submit this memorandum in support of their Motion for Award of Attorneys' Fees and Costs.

<u>PRELIMINARY STATEMENT</u>

The defendants in this consolidated class action spent nearly four years and well over one million dollars defending themselves against entirely baseless claims that they violated Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").  In dismissing plaintiffs' claims alleging materially misleading omissions from the registration statements of forty-four ProShares exchange-trade funds ("ETFs"), this Court held that plaintiffs' theory was flatly contradicted by the "plain language" of the funds' disclosures – indeed that it was "not possible" to read the disclosures as plaintiffs alleged.  The Second Circuit affirmed, also concluding that no reasonable investor could have been misled by the ProShares registration statements, and plaintiffs have now wisely let the deadline to seek Supreme Court review pass.

The Securities Act contains a fee-shifting provision in Section 11(e), providing for the recovery of the defendants' costs, including reasonable attorneys' fees, if the court finds that plaintiffs' claims under the Act are "without merit."  *See* 15 U.S.C. § 77k(e).  Defendants respectfully submit that they are entitled to such a recovery in this case, where the plaintiffs' claims were not merely "without merit," but were indeed so plainly belied by the funds' clear disclosures as to be frivolous.  Plaintiffs and their counsel, looking to capitalize on the market volatility of the 2008-2009 financial crisis, simply ignored the prospectus disclosures that contradicted their theory and subjected defendants to multiple amended complaints and repeated rounds of motion and appeal briefing.

The defendants have no recourse for the time and energy they have wasted defending against these claims or any negative publicity generated by plaintiffs' cynical misuse of the Securities Act.  But Section 11(e) contemplates that plaintiffs in cases like this will be held responsible for the significant out-of-pocket expenses they impose on defendants by launching meritless litigation.  Plaintiffs here should be held to account.

## BACKGROUND

Plaintiffs in this case purported to bring multiple class actions on behalf of investors in forty-four ETFs with daily investment objectives tied to an underlying benchmark index (the "Funds").  Plaintiffs asserted claims under Sections 11 and 15 of the Securities Act alleging that the registration statements at issue contained material misstatements and omissions relating to the risk that the Funds would not achieve their stated objectives on a cumulative basis for periods longer than one day.  Plaintiffs' first complaint, *Novick v. ProShares Trust et al.*, No. 09-cv-6945, was filed on August 5, 2009.  More than 30 additional individual complaints were filed over the next several months, each reiterating the same fundamental claims against each defendant.  The defendants moved the Court to consolidate all of the actions and to appoint a single lead plaintiff.  Various of the plaintiffs and their respective law firms opposed, seeking instead a complex structure involving multiple actions and multiple lead plaintiffs and lead counsel.

After briefing and argument of these issues, the Court consolidated all the pending actions and later appointed a single lead plaintiff and lead co-counsel.  Plaintiffs filed their first Amended Consolidated Class Action Complaint on September 24, 2010, more than a year after the first action was initiated.  After the defendants moved to dismiss, plaintiffs elected to amend their complaint again in an attempt to address its inadequacies.  Plaintiffs filed a Second Amended Consolidated Class Action Complaint on January 31, 2011, and the defendants moved to dismiss the new pleading on March 17, 2011.  Following briefing and argument on whether

plaintiffs should be granted leave to amend their pleading yet again, plaintiffs filed a Third Amended Consolidated Class Action Complaint (the "Complaint") on November 10, 2011, adding ProShare Advisors as a Section 15 defendant. Defendants' then-pending motion to dismiss the Second Amended Complaint was deemed directed against the Third Amended Complaint. The Court heard extensive oral argument on the motion to dismiss on February 2, 2012, following which plaintiffs submitted further supplemental briefing, to which the defendants responded.

On September 7, 2012, the Court dismissed all of plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim. In dismissing plaintiffs' Section 11 and Section 15 claims, the district court held that the "plain language of the registration statements addresse[d] the relevant risk directly" and that "[i]t is not possible to read the registration statements . . . without understanding that the ETFs were particularly risky and speculative and were intended to meet their stated goal only over the course of a single day." *In re ProShares Trust Secs. Litig.*, 889 F. Supp. 2d 644, 654, 655 (S.D.N.Y. 2012) ("DC Op."). In other words, it is "not possible" to read the registration statements in the way that plaintiffs insisted they must be. Plaintiffs filed a Notice of Appeal on October 5, 2012, and oral argument was held before the Second Circuit on May 2, 2013. The Second Circuit affirmed this Court's dismissal of all claims, agreeing that "no reasonable investor could read these prospectuses without realizing that volatility, combined with leveraging, subjected that investment to a great risk of long-term loss as market volatility increased." *In re ProShares Trust Secs. Litig.*, 728 F.3d 96, 105  (2d Cir. 2013) ("2d Cir. Op."). Plaintiffs have not sought rehearing, the Second Circuit's mandate issued on August 20, 2013, and the deadline to seek Supreme Court review passed on October 21, 2013.

## ARGUMENT

Under Section 11(e) of the Securities Act, a court can enter an award of attorneys' fees against a plaintiff if the court finds that plaintiff's claims under the Act are "without merit":

> In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

15 U.S.C. § 77k(e).  Congress enacted this provision in order to "deter the bringing of meritless actions solely for the purposes of procuring a favorable settlement."  *Straus v. Holiday Inns, Inc.*, 460 F. Supp. 729, 732 (S.D.N.Y. 1978).  The decision whether to award fees under Section 11(e) is within the discretion of the district court.  *Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1056 (2d Cir. 1969).  The Second Circuit has interpreted the term "without merit" to authorize sanctions if the claim "was brought in bad faith or at best bordered on the frivolous."  *Healey v. Chelsea Res., Ltd.*, 947 F. 2d 611, 622 (2d Cir. 1991).  Plaintiffs' claims in this case were frivolous on their face, as ProShares' registration statements repeatedly disclosed the precise risk that plaintiffs claim later materialized.  Defendants thus respectfully request that this Court award them their reasonable attorneys' fees and costs incurred defending against a lengthy and baseless litigation.

**A.      Plaintiffs' Claims Are Contradicted by ProShares' "Plain English" Disclosures**

A simple read of the ProShares' registration statements plaintiffs challenged as misleading would have alerted them to the fact that their claims were frivolous.  As both this Court and the Second Circuit held, the specific risk of which plaintiffs complain was repeatedly disclosed throughout ProShares' registration statements, comprised of the funds' prospectuses and Statements of Additional Information ("SAI").  *See, e.g.*, DC Op. at 656 ("[T]he disclosures

4

in the registration statements accurately conveyed the specific risk that the plaintiffs assert materialized."). On the very first page of each of the prospectuses (immediately after the table of contents), ProShares explained that the Funds had *daily* investment objectives and that the Funds *would not* meet these objectives for periods longer than a day. *See, e.g.*, 9/28/07 RS at 6;[1] DC Op. at 650 ("[I]t is undisputed that each statement explained that 'the Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results.'"). Indeed, the word "daily" appears over 250 times in each of the full operative registration statements. *See, e.g.*, 9/28/07 RS.

Moreover, plaintiffs never allege that the ETFs failed to meet their stated investment objective on a daily basis; indeed, the Funds performed exactly as the registration statements disclosed they would. Plaintiffs' blatant disregard for these disclosures and attempt to attach liability based on a supposed feature that ProShares specifically disclaimed – *i.e.* a fund's cumulative return matching that of its index for periods longer than a day – is frivolous. *See, e.g.*, *Rubin v. Long Island Lighting Co.*, 576 F. Supp. 608, 612-16 (E.D.N.Y. 1984) (finding plaintiffs' claims frivolous and awarding fees under Section 11(e) in case where relevant facts were disclosed in registration statement and alleged omissions were not facts that a reasonable investor would consider important); *Lear v. Tierney*, No. 07-cv-0176-BES (VPC), 2008 WL 2699682, *6 (D. Nev. July 1, 2008) (granting Section 11(e) fee award where, "despite [the] clear terms" of the convertible note at issue, plaintiffs alleged that defendants made false and misleading statements in violation of the 1933 act, finding that "[t]he terms of the convertible

---

[1] A sample registration statement and appendices of the relevant disclosures of both ProShares Trust and ProShares Trust II were included in the materials submitted to both this court and the Second Circuit. For space considerations, they are not reproduced here.

note are plain, and plaintiffs had no viable basis for claims for relief based on federal securities fraud").

Read in their entirety, ProShares' registration statements clearly warned investors that the cumulative returns of the Funds would not track the cumulative returns of their respective underlying benchmarks.[2]  For example, in addition to disclosing the daily investment objective and the effect of mathematical compounding on cumulative returns, ProShares' registration statements also explained that the Funds employed aggressive investment techniques and that the compounding effect is amplified by the use of leverage and further amplified during periods of high volatility.  ProShares warned both textually and graphically that any divergence could be "significant;" in short, "the registration statements at issue stated in plain English that the ETFs' objectives were daily only, that it was mathematically impossible for the ETFs to achieve their goals for periods longer than one day, and that the ETFs' value could 'diverge significantly' from the underlying index when the ETFs were held for longer than one day."  DC Op. at 654. As a result, the Court found that "it is not possible to read the registration statements . . . without understanding that the ETFs were particularly risky and speculative and were intended to meet their stated goal only over the course of a single day."  *Id.* at 655; *see also* 2d Cir. Op. at *10 ("[N]o reasonable investor could read the prospectuses without understanding beyond-a-day risk

---

[2] The fact that similar Section 11 cases were asserted against other ETF providers and survived motions to dismiss does not demonstrate that plaintiffs' allegations in this case are not frivolous. In prior briefing, plaintiffs have argued that ProShares' disclosures should be likened to those of the Rydex and Direxion funds.  However, ProShares had a number of additional disclosures that these other funds did not.  Indeed, Judge Forrest of this Court denied the Direxion defendants' motion to stay the action against them pending the outcome of plaintiffs' appeal in this matter precisely because the disclosures in the two cases are too distinct for a ruling in this case to necessarily have a bearing on the *Direxion* case.  *See* Order, *In re Direxion Shares ETF Trust*, No. 09-cv-8011, ECF No. 170, at 2 (S.D.N.Y. Nov. 8, 2012).  Similarly, ProShares' registration statements did not contain the type of penalties or enticements present in the other ETF cases that encouraged investors to hold those ETFs for longer than one day.  DC Op. at 654.

exposure."). Plaintiffs nonetheless chose to turn a blind eye to these repeated disclosures and bring a frivolous lawsuit not grounded in fact. As such, an award of fees is justified. *See, e.g.*, *Wielgos v. Commonwealth Edison Co.*, 123 F.R.D. 299, 304 (N.D. Ill. 1998) (awarding fees under, among other things, Section 11(e) because plaintiffs' Section 11 allegations that a registration statement contained material nondisclosures was "not well grounded in fact" and that a "reasonable inquiry" of looking at all parts of the registration statement would have shown that the vast majority of the alleged nondisclosures were in fact disclosed).

Awards of attorneys' fees under Section 11(e) are particularly appropriate in cases such as this one which involve sophisticated investors. *See, e.g.*, *Healey*, 947 F.2d at 622 ("In considering these questions, the court may consider, *inter alia,* the sophistication of the plaintiff as an investor."); *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75, 80 (2d Cir. 1986). While the sophistication of every potential plaintiff in a class action cannot be determined, plaintiffs' own filings show that the named plaintiffs here are sophisticated enough investors to realize their claims are frivolous. For example, as demonstrated in verifications appended to the Complaint, lead plaintiff Mark Karasick, the one individual the plaintiffs specifically identified in their Second Circuit briefing, made over 100 separate purchases of shares of the SRS Fund over a nine day period from December 22 to December 30, 2008. Similarly, named plaintiff Wendy Rockwell-Goff repeatedly engaged in intra-day trading of a number of different funds. Indeed, almost 75% of her transactions involved selling her shares of a Fund the same day she bought them. Similar buying and selling patterns can be found throughout the plaintiffs' verifications. Such experienced investors should have known to carefully read all the disclosures in ProShares' registration statements. *See, e.g.*, *Zissu*, 805 F.2d at 80 (upholding district court's awarding of

attorneys' fees under Section 11(e), noting that a sophisticated investor such as Zissu should have known enough not to consider projections to be representations about the future).

**B.  Plaintiffs Cannot Avoid the Plain Language of the Disclosures by Inventing Supposed Disclosure Obligations**

With no way to explain away the plain English disclosures that disprove their claims, plaintiffs instead attempted to assert that ProShares violated various non-existent disclosure obligations.  These verbal gymnastics did not make plaintiffs' claims any less frivolous.  For example, plaintiffs argued that ProShares' warning that a Fund could "diverge significantly" from its underlying benchmark if held for longer than a day somehow did not put a reasonable investor on notice that they might suffer significant losses on their investment.  As the Second Circuit recognized, plaintiffs' argument is completely without merit.  *See, e.g.*, 2d Cir. Op. at *5 ("Plaintiffs' efforts to find a meaningful distinction between 'diverge significantly' and 'actual loss' strains the plain meaning of the former phrase."); *id*. at *6 ("[I]t is implausible that substituting 'actual loss' for 'diverge significantly' is a change substantially likely to be viewed by a reasonable investor as having significantly altered the import of the total mix of information."); DC Op. at 655 (noting that even if "some plaintiffs lost money while guessing correctly on the direction of the underlying index, this possibility is plainly consistent with the significant divergence that was disclosed").  Forcing ProShares to endure four years of litigation because plaintiffs preferred a different word choice reeks of frivolity, especially since ProShares warned of potential losses elsewhere in the registration statements as well.

Plaintiffs' claims boil down to hindsight pleading – *i.e.*, because some investors lost money during an unprecedented financial crisis, something must have been wrong with the Funds.  But plaintiffs' attempt to hold ProShares liable for failing to predict investors' future

losses is frivolous.[3]  ProShares was not obligated to make specific predictions regarding the Funds' cumulative returns for periods longer than a day in 2008-2009, as plaintiffs' theory suggests.  When ProShares disclosed the relevant risks, there was a virtually infinite number of potential results based on which Fund's shares were purchased, the dates they were purchased, how long the shares were held, the index return over the holding period, and the volatility over that period.  ProShares could never realistically have included all these potential permutations and the securities laws do not require them to do so.  *See* 2d Cir. Op. at *7 ("ProShares cannot be expected to predict and disclose all possible negative results across any market scenario."); DC Op. at 656 ("[I]t is not a material omission to fail to predict future market performance."). Courts have granted Section 11(e) fee awards for similar attempts to improperly force securities defendants to predict the future.  *See, e.g. Straus*, 460 F. Supp. at 734-36 (granting undertaking request based on defendants' argument that there could be no liability for their alleged failure to forecast in a March 23rd registration statement what their performance would be for the fiscal quarter ending April 2nd); *Rubin*, 576 F. Supp. at 614 (awarding fee reimbursement and stating "it is clear that SEC registrants are under no duty to make speculative projections of financial or economic events to satisfy the curiosity of an investor as to immaterial matters").

Plaintiffs attempt to mask their hindsight pleading and distract the Court from the "plain English" disclosures of the registration statements by alleging that ProShares had an obligation to provide an "undisclosed mathematical formula" that supposedly gave ProShares the ability to "project to the day exactly when such opposite performance and such losses would begin to

---

[3] Notably, plaintiffs' Complaint and briefing did not in most cases set forth examples of investors' *actual* losses but rather hypothetical losses that investors *could* have suffered using cherry-picked buy and sell dates.  The fact that these same investors could have *made* money using different hypothetical buy and sell dates, as demonstrated in the defendants' briefing, shows the absurdity of plaintiffs' claims.

occur in every market scenario."  This argument is frivolous on its face.  Even if plaintiffs'

allegations were correct that this undisclosed formula would yield returns for a Fund if given all

the necessary inputs (including when a share was purchased, the length of time this share was

held, and the market volatility during that holding period), ProShares could not possibly have

known those factors in advance.  *See* DC Op. at 656 ("Plaintiffs assertion that ProShares knew in

advance through a mathematical formula that large losses would occur is implausible.").  Simply

put, plaintiffs attempted to attach liability by demanding that ProShares do the impossible.

    That plaintiffs' claims are overstated and frivolous is shown by their own experiences.

Contrary to their allegations that the Funds were an undisclosed "must lose" proposition, certain

named plaintiffs experienced better than "expected" cumulative returns.  For example, named

plaintiff Anthony Alexander purchased 100 shares of the ProShares UltraShort Technology

(REW) Fund on July 14, 2008 for $67.86 per share.  He sold 100 shares on October 10, 2008 for

$125.16 per share, making a profit of approximately $5,729 dollars.  Had the ETF had "perfect

correlation" of cumulative returns as plaintiffs insist was promised, Mr. Alexander would have

only made $3,735.  Since the benchmark Dow Jones US Technology Index fell 27.52% during

this period, Mr. Alexander would presumably have "expected" his investment to double the

inverse, or increase by 55.04%.  Instead, his investment increased by 84.4%.  Mr. Alexander

made more money than "expected" despite the fact that the annualized volatility for the

benchmark from May 31, 2008 to May 31, 2009 was 45.2%.  5/31/09 N-CSR at 4.  Examples

like this demonstrate that plaintiffs and their counsel should have known before filing their

Complaint that their claims had no basis.  They filed anyway.  They should be held responsible.

## CONCLUSION

    For the foregoing reasons, Defendants respectfully request that this Court award them

their reasonable fees and other costs pursuant to Section 11(e) of the Securities Act of 1933.

Dated:  October 22, 2013                    Respectfully submitted,

                                            ROPES & GRAY LLP


                                            By: /s/ Robert A. Skinner
                                            Robert A. Skinner
                                            Nick W. Rose
                                            Prudential Tower
                                            800 Boylston Street
                                            Boston, MA  02199
                                            Tel: (617) 951-7000
                                            Fax: (617) 951-7050
                                            robert.skinner@ropesgray.com

                                            *Attorneys for defendants ProShares Trust,
                                            ProShares Trust II, ProShare Advisors LLC, SEI
                                            Investments Distribution Co., Michael Sapir, Louis
                                            Mayberg, Edward Karpowicz, William Seale,
                                            Ph.D., Simon Collier and Charles Todd*


                                            KRAMER LEVIN NAFTALIS & FRANKEL LLP


                                            By: /s/ Arthur H. Aufses III
                                            Arthur H. Aufses III
                                            1177 Avenue of the Americas
                                            New York, NY 10036
                                            Tel: (212) 715-9100
                                            Fax:  (212) 715-8000
                                            aaufses@kramerlevin.com
                                            *Attorneys for defendants Russell Reynolds and
                                            Michael Wachs*

                                            11

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on October 22, 2013, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the ECF system.

<u>/s/ Robert A. Skinner</u>
Robert A. Skinner
