# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PROSHARES TRUST SECURITIES LITIGATION | x   Civil No. 1:09-cv-06935-JGK<br>:<br>x   ECF Case |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

Christopher Lovell (CL 2595)
Victor E. Stewart (VS 4309)
Ian T. Stoll (IS 3424)
Benjamin M. Jaccarino (BJ 1273)
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

Jacob H. Zamansky (JZ 1999)
Edward H. Glenn, Jr. (EG 0042)
**ZAMANSKY & ASSOCIATES LLC**
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177

*Lead Counsel for Plaintiffs*

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................1

Statement of Facts ...........................................................................................................1

Argument ........................................................................................................................2

    Point I.  To Justify An Award Of Fees Under Section 11(e), Defendants Must
    Show That A Specific Plaintiff Acted In Bad Faith And Made A Frivolous Claim ..........2

    Point II.  Defendants Fail To Demonstrate That Any Plaintiff Acted In Bad Faith Or
    Made A Frivolous Claim ...............................................................................................4

        A.      Plaintiffs Had A Good Faith Basis To Bring The Claims Because
                Seventeen Experienced Class Action Securities Law Firms Made The
                Allegations Here, Vouched For Their Reasonableness, And Fought For
                The Right To Prosecute The Claims On A Contingent Fee Basis ..............4

        B.      Plaintiffs Had A Good Faith Basis To Bring Their Claims Because
                Defendants Never Asserted That The Claims Were Frivolous Or Brought
                In Bad Faith.......................................................................................4

                1.      Defendants Had Many Opportunities To Object But Never
                        Did So ...............................................................................5

                2.      Neither This Court Nor The Court Of Appeals Awarded Costs
                        Against Plaintiffs And, Conspicuously, Defendants Did Not
                        Even Seek Any Award Of Costs At The Time Of The
                        Judgment Herein Nor In The Court Of Appeals .............................6

                3.      Defendants Are Estopped By Their Own Conduct From Now
                        Arguing Bad Faith..........................................................7

        C.      Plaintiffs Had A Good Faith Basis For Their Claims Because,
                 Substantively, The Allegations Were Logical, Though, Ultimately The
                 Court Was Not "Persuaded" .......................................................7

        D.      Plaintiffs' Good Faith Basis For Their Claims Is Further Evidenced
                 In The Complimentary Statements By The Court Of Appeals And The
                 Extensive, Careful Consideration By That Court And This
                 One Of Plaintiffs' Claims .......................................................11

i

1.      The Compliment Accorded To Plaintiffs And Defendants At The Conclusion Of Oral Argument .......................................................12

2.      The Indications During Oral Argument Of Doubt As To Whether Plaintiffs Or Defendants Were Correct ..........................................12

3.      Further Demonstrating The Non-Frivolous Nature Of Plaintiffs' Claims, The Second Circuit Clarified In Plaintiffs' Favor Interpretations Of The Law Under Section 11 In This Circuit ......13

4.      This case required the serious engagement of both courts in complex issues ............................................................................14

D.      Plaintiffs Had A Good Faith Basis For Their Claims Because, Substantively, The Allegations Were Logical, Though, Ultimately The Court Was Not "Persuaded" ..............................................13

E.      In The Foregoing Context, Defendants Fail To Carry Their Burden To Show That Plaintiffs Acted In Bad Faith Or Made Frivolous Claims.......15

Point III.  Defendants Fail Even to Assert That 32 of The 35 Named Plaintiffs Are Sophisticated Investors ...............................................................18

Point IV.  Defendants' Motion Is Untimely.................................................................22

A.      Defendants Have Tactically Failed To Comply With Fed. R. Civ. P. 54 and the Local Rules of This Court ..............................22

1.      No Statute "Provides Otherwise" to Rule 54(d)(2)(B) .................23

2.      As Defendants Can Point to No "Excusable Neglect" to Explain Their Thirteen-Month Delay, This Court Should Not "Provide Otherwise" to Rule 54(d)(2)(B)......................................23

3.      Because PSLRA Processes Were Employed, Defendants Should Have Sought Relief Under The PSLRA But Have Waived Their Right To Do So .......................................................24

Conclusion ......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Aid Auto Stores, Inc. v. Cannon,*
    525 F.2d 468 (2d Cir. 1975) ............................................................................................ 3

*Anderson v. Davis Polk & Wardwell,*
    850 F.Supp.2d 392 (S.D.N.Y. 2012) ............................................................................. 6

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.,*
    579 F.3d 143 (2d Cir. 2009) .......................................................................................... 25

*Browning Debenture Holders' Committee v. DASA Corp.,*
    560 F.2d 1078 (2d Cir. 1977) .................................................................................. 18, 19

*Dow Chemical Pacific Ltd. v. Rascator Maritme S.A.,*
    782 F.2d 329 (2d Cir. 1986) .......................................................................................... 19

*Friedman v. Ganassi,*
    853 F.2d 207 (3d Cir. 1988) .......................................................................................... 23

*Gurary v. Winehouse,*
    190 F.3d 37 (2d Cir. 1999) ............................................................................................ 25

*Healey v. Chelsea Res., Ltd.,*
    947 F.2d 611 (2d Cir. 1991) ........................................................................................ 3, 7

*Healey v. Chelsea Resources, Ltd.,*
    132 F.R.D. 346 (S.D.N.Y. 1990) ................................................................................. 3, 7

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983) .................................................................................................... 8, 14

*Hughes v. Rowe,*
    449 U.S. 5 (1980) ............................................................................................................ 11

Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,
    159 F.3d 723 (2d Cir. 1998) ...................................................................................... 13, 14

*In re Charter Communications, Inc. Sec. Litig.,*
    519 F.3d 730 (8th Cir. 2008) ....................................................................................... 25

*In Re ProShares Trust Sec. Litig.,*
    728 F.3d 96 (2d. Cir. 2013) .................................................................................... passim

*In Re ProShares Trust Sec. Litig.*,
　　889 F.Supp.2d. 644 (S.D.N.Y. 2012) ................................ 14, 16, 17, 18

*Litwin v. Blackstone Group, L.P.*,
　　634 F.3d 706 (2d Cir. 2011) ................................................ 8

*Marx v. General Revenue Corp.*,
　　___ U.S. ___, 133 S.Ct. 1166 (2013) ................................ 23

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
　　55 F.3d 34 (2d Cir. 1995) ................................................ 19

*Morris v. Wachovia Securities, Inc.*,
　　448 F.3d 268 (4th Cir. 2006) ............................................ 25

*Openwave Systems Sec. Litig.*,
　　528 F.Supp.2d 236 (S.D.N.Y. 2007) ................................ 14

*Rombach v. Chang*,
　　355 F.3d 164 (2d Cir. 2004) ............................................ 25

*Slader v. Pearle Vision Inc.*,
　　199 F.R.D. 125 (S.D.N.Y. 2001) ...................................... 22

*Tancredi v. Metropolitan Life Insurance Co.*,
　　378 F.3d 220 ................................................................ 11, 23

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
　　564 F.3d 110 (2d Cir. 2009) ............................................ 19

*Zissu v. Bear, Stearns & Co.*,
　　627 F.Supp. 687 (S.D.N.Y. 1986) .................................... 3, 6

*Zissu v. Bear, Stearns & Co.*,
　　805 F.2d 75 (2d. Cir. 1986) ............................................ 2, 3, 6

**Statutes**

11 U.S.C. § 77k(e) ................................................................ 23

15 U.S.C. § 78u-4(c)(1) ........................................................ 24

15 U.S.C. §77k(e) ............................................................ 1, 23

15 U.S.C. § 77z-1(c) ............................................................ 25

15 U.S.C. §77z-1(c)(1) .................................................................... 1, 24

15 U.S.C. §77z-1(2)(A) .................................................................... 20

**Rules**

Fed .R. Civ. P. 11 .......................................................................... 25

Fed .R. Civ. P. 11(b) ...................................................................... 25

Fed .R. Civ. P. 54 ....................................................................... 1, 23, 24

Fed .R. Civ. P. 54(d) ...................................................................... 23

Fed .R. Civ. P. 54(d)(2)(B) ............................................................ 22, 23

**Regulations**

17 C.F.R. § 229.503 ......................................................................... 8

17 C.F.R. § 230421 .......................................................................... 8

## Preliminary Statement

Plaintiffs respectfully submit this memorandum and the accompanying declaration of Fred Isquith, Esq. ("Isquith Decl.") in opposition to Defendants'[1] motion pursuant to Section 11(e) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77k(e).  Defendants' motion should be denied because Defendants have failed their movants' burden to demonstrate:

a) that any Plaintiff acted in bad faith or that the claims here were frivolous in alleging that Defendants' registration statements were misleading under Section 11 of the Securities Act; *see* Argument "II" below;

b) that any Plaintiffs, including the only three Plaintiffs mentioned by name in Defendants' motion --- Mark Karasick, Wendy Rockwell-Goff, and Anthony Alexander --- are supposedly "sophisticated" in securities investments or otherwise acted in bad faith in bringing the litigation; *see* Argument "III" below; and/or

c) that Defendants' Section 11(e) motion is timely made and is otherwise not precluded by specific requirements of Rule 54 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §77z-1(c)(1).  *See* Argument "IV" below.

### STATEMENT OF FACTS

---

[1] The ProShares Trust I Defendants are ProShares Trust, Louis M. Mayberg, President; Michael L. Sapir, Trustee, Chairman; Russell S. Reynolds, III, Trustee; Michael Wachs, Trustee; Simon D. Collier, Treasurer; and Charles S. Todd, Treasurer; and ProShare Advisors LLC, which serves as investment advisor to each and every fund and performs various management and control functions. ¶¶1,fn.1,62-74,89-90 (Docket Entry ("D.E.")188-2). The ProShares Trust II Defendants are ProShares Trust II, Louis M. Mayberg, Principal Executive Officer; Edward Karpowicz, Principal Financial Officer. ¶¶1,fn.1,62-74,91-92, 301 (D.E.188-2).

A chronology of the proceedings in this action and an unofficial transcript of the recording of the oral argument in the Second Circuit Court of Appeals have been set forth in the Isquith Decl.  Further facts are developed in the context of Argument below.

## ARGUMENT

**Point I.**      **To Justify An Award Of Fees Under Section  11(e), Defendants Must Show That A Specific Plaintiff Acted In Bad Faith And Made A Frivolous Claim**

Defendants appear to misconstrue the Section 11(e) standard for awarding fees by citing to *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (2d. Cir. 1986) for the proposition that losing a Section 11 claim is tantamount to owing fees under Section 11(e).  Def. Br. p. 7.  However, in *Zissu*, the Second Circuit took pains to emphasize clearly that: "To hold that a suit is without merit under §11(e), a court must find the claim is **frivolous or brought in bad faith.**  805 F.2d at 80 (citations omitted).  In this case, the district court determined Zissu's claim **and his conduct of the litigation** to be utterly without merit." *Id.* (emphasis supplied).  In *Zissu*, the District Court had stated:

> For the Court to award attorneys' fees, it must find that plaintiff's suit was "without merit." The Second Circuit has held that this means the Court must find that the suit "borders on the frivolous or has been brought in bad faith." **Mere failure of the plaintiff to present sufficient evidence to support his claims does not in itself support a finding of frivolity.**
>
> **While the Court recognizes that costs and attorneys' fees should not be awarded simply because defendants prevailed**, Zissu's claims were utterly without merit…If there ever has been a case involving frivolous or bad faith claims, it is this one… Upon the entire record, it is an understatement merely to say that this was a strike suit instituted for its nuisance and settlement value. **It is a brazen attempt by plaintiff to disregard his contractual obligation [as an investor in a highly risky oil and gas exploration venture].**" (footnotes omitted) (emphasis supplied).

*Zissu v. Bear, Stearns & Co.*, 627 F.Supp. 687, 694 (S.D.N.Y. 1986).  The Court of Appeals

cited the District Court's language with approval, emphasizing the extraordinary circumstances

of Zissu's misconduct.  *Zissu*, 805 F.2d at 80.

Defendants also rely on *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611 (2d Cir. 1991) which

defined the applicable standard as follows:

> Section 11(e) of the 1933 Act allows the district court, in its discretion, to award
> sanctions against a plaintiff if the court finds the claims under that Act to have been
> 'without merit.'  We have interpreted the term 'without merit' as used in that section to
> authorize sanctions only if the court has found that the claim at issue was brought in bad
> faith or at best bordered on the frivolous.

*Id*. at 622 (citations omitted).  The Court of Appeals emphasized that the *Healey* district court

had stated that: "[t]his case never should have been brought," *id.*, and that:

> Further, the court's finding that Healey's claims were "bogus," August Opinion,
> 132 F.R.D. at 350, and that Healey had a "bad faith ... deliberate intent to
> blackmail the Dominick defendants into paying him off," *id.* at 353, were
> supported by, *inter alia,* the trial testimony that prior to commencing the suit,
> Healey told McAlister that he was considering suing Dominick in anticipation
> that it would settle in order to avoid having its "good name smeared," (Tr. 436).

*Id*. These facts are the virtual opposite of the compliments accorded to Plaintiffs by the Court of

Appeals Panel in this litigation.  See Point II.C below.

Thus, the claims in *Zissu* and *Healey* did **not** go through the stringent standards of the

PSLRA.  Instead, they involved lone wolf investors seeking to escape their contract obligations

to pay money (*Zissu*) or to threaten to harm the reputation of others (*Healey*).

In stark contrast, a judgment that, as here, resolves competing arguments about what

might be material to a reasonable investor is not an occasion for the award of attorney's fees.

*See Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir. 1975) (reversing Section 11(e)

fee award where plaintiff's case was not frivolous, even though "[t]here could be but one

reasonable conclusion" of directed verdict for defendant); *Cronin v. Executive House Realty*,

No. 80 Civ. 7254, 1982 WL 1303 at *22 (S.D.N.Y. May 5, 1982) (denying fees because although

defenses were "not persuasive," they could not be classified as "being per se without legal

merit").

**Point II.      Defendants Fail To Demonstrate That Any Plaintiff Acted In Bad
             Faith Or Made A Frivolous Claim**

Although Plaintiffs have no burden here, Plaintiffs demonstrate below numerous facts

and circumstances indicating that Plaintiffs acted in good faith to bring non-frivolous claims

here.  *See* Subpoints "A"-"D" *infra.* In this context, Defendants woefully fail their movants'

burden to demonstrate Plaintiffs' claims were frivolous or Plaintiffs acted in bad faith.  *See* "E"

infra.

**A.  Plaintiffs Had A Good Faith Basis To Bring The Claims Because Seventeen
    Experienced Class Action Securities Law Firms Made The Allegations Here,
    Vouched For Their Reasonableness, And Fought For The Right To Prosecute The
    Claims On A Contingent Fee Basis**

Unlike in *Zissu* and *Healey,* here, each Plaintiff had a good faith basis for their claims

because seventeen different experienced class action law firms brought these same claims.

Isquith Decl. ¶12.  Six such experienced law firms further accredited the claims here by moving

to be appointed lead counsel.  *Id.* at ¶14.  The Court followed the PSLRA process.  *Id.* at ¶14.

In the fact context of so many experienced securities counsel vouching for the merits of

the claims here, how could an individual plaintiff be found personally to have been in bad faith

or to have "divined" that the claims were somehow frivolous notwithstanding the PSLRA

process?

**B.  Plaintiffs Had A Good Faith Basis To Bring Their Claims Because Defendants
    Never Asserted That The Claims Were Frivolous Or Brought In Bad Faith.**

Consistent with the express compliments to Plaintiffs and Defendants by the Court of

Appeals (*see* "C" below), the Defendants, throughout this litigation, never suggested that

Plaintiffs were bringing these claims in bad faith or the claims were frivolous.  Docket *passim*; Isquith Decl. ¶¶10-32.

### 1. Defendants Had Many Opportunities To Object But Never Did So

Throughout the four years of this litigation, Defendants had many opportunities to raise objections based upon frivolous or bad faith pleadings but never once did so, nor did this Court or the Panel hearing this case on appeal suggest at any point that Plaintiffs had ever conducted themselves in such a manner that sanctions under the provisions of Section 11(e) of the Securities Act would be plausible, much less appropriate.  When the litigation was organized in 2009, with some 26 actions filed and at one point some 17 fully briefed motions for lead plaintiff filed, there was no thought that Plaintiffs' allegations were frivolous or made in bad faith. *See* Isquith Declaration at ¶¶10-14.

Subsequently, Defendants had many opportunities to assert that Plaintiffs were engaged in frivolous or bad faith litigation, but they never once did so. *See, e.g.,* Isquith Declaration at ¶16 (motion to dismiss); ¶17 (election to file Second Amended Complaint); ¶18 (renewed motion to dismiss); ¶22 (motion to file a Third Amended Complaint); ¶23 (oral argument before this Court); ¶25 (Defendants' election not to modify existing motion to dismiss briefing); ¶28 (letter exchange subsequent to oral argument); ¶29 (new authority letter); ¶30 (this Court's Opinion); ¶31 (filing of Defendants' Brief in Opposition); and ¶32 (oral argument on appeal).

Just the opposite, Defendants carefully asserted all of their rights and arguments, refusing ever to put their litigation eggs all into the basket that there was no risk that Defendants' registration statements were misleading.  *Id*. at ¶¶16-29.  Thus, Defendants **un**successfully and vigorously opposed Plaintiffs' motion to amend.  Isquith Decl. ¶¶22-23.  Although bad faith is

grounds for denial of a motion to amend,[2] Defendants conspicuously did not argue that Plaintiffs were acting in bad faith.  Docket No. 191.  Further, Defendants were sufficiently compelled by their concerns about the factual sympathy and strength of Plaintiffs' claims to make legal arguments that the Second Circuit rejected.  *See* "D" below.

In sum, what Defendants said and failed to say during this litigation, shows that Defendants themselves thought the claims here were serious good faith claims. Defendants themselves acknowledged at oral argument in the Court of Appeals that the only difference between the parties was a "matter of degree".  *See* Isquith Declaration.  Ex. A at 26.

## 2.   Neither This Court Nor The Court Of Appeals Awarded Costs Against Plaintiffs And, Conspicuously, Defendants Did Not Even Seek Any Award Of Costs At The Time Of The Judgment Herein Nor In The Court Of Appeals.

Defendants did not submit a bill of costs in the District Court and no costs were awarded by the District Court or entered by the Clerk of the District Court. Defendants did not seek costs in the Court of Appeals, and the Court of Appeals did not *sua sponte* award Defendants any costs on appeal. Defendants' conduct here is unlike that of the defendants in *Zissu*, which did not wait to seek attorney's fees until after a closely contested appeal.  Rather, they sought and were awarded fees in the district court.  627 F.Supp. at 694 ("If there ever has been a case involving frivolous or bad faith claims, it is this one…").  Plaintiff in *Zissu* simultaneously appealed both the merits and attorney's fee decisions.  *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (2d. Cir. 1986).  The Court of Appeals affirmed the award of fees on the ground that plaintiff's securities fraud claim was frivolous.  *Id*. at 80-81.

---

[2] *Anderson v. Davis Polk & Wardwell*, 850 F.Supp.2d 392, 415-16 (S.D.N.Y. 2012) (denying leave to amend where movant has acted in bad faith).

Nor in *Healey v. Chelsea Resources, Ltd*., 132 F.R.D. 346 (S.D.N.Y. 1990), did defendants wait to seek attorney's fees until after a closely contested appeal, but instead moved for sanctions after trial.  *Id*. at 352.  On appeal, the court reversed the award against plaintiff's attorney as unauthorized under Section 11(e), and vacated and remanded the award against plaintiff.  Finding no misapplication of the law or erroneous finding of fact, the court held that the district court had abused its discretion in deciding the sanctions motion against plaintiff's attorney together with the merits, and in refusing to allow plaintiff to augment the record or reargue. *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 622-23 (2d Cir. 1991).

### 3.   Defendants Are Estopped By Their Own Conduct From Now Arguing Bad Faith

Instead of arguing that the sympathetic investors who had suffered large losses were acting in bad faith or bringing frivolous claims, Defendants consistently argued that the difference between Plaintiffs and Defendants was a "matter of degree."  Isquith Decl. Ex. A at p. 26 (unofficial transcript of oral argument in the Second Circuit Court of Appeals).  Given the large investor losses here, this form of argument was more palatable to the Courts and strategically benefited Defendants.

Having gained from this litigation tactic earlier in the litigation while conspicuously refusing to request costs at any point, Defendants should now be estopped from reversing themselves at the end of litigation, and asserting, without having given any prior notice to any Plaintiff, that the claims supposedly had been frivolous or in bad faith.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also* Point IV *infra* regarding the legal requirement that Defendants seek costs earlier than they have, and do so under a different portion of the securities laws when PSLRA processes have been followed.

### C.   Plaintiffs Had A Good Faith Basis For Their Claims Because, Substantively, The Allegations Were Logical, Though, Ultimately The Court Was Not "Persuaded".

> Section 11 of the 1933 Act…. was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering. **If a plaintiff purchased a security issued pursuant to a registration statement, he [or she] need only show a material misstatement or omission to establish his *prima facie* case.**

*Herman & MacLean*, 459 U.S. at 381-82 (emphasis supplied).  Claims under Section 11 of the Securities Act may be established if the Plaintiff shows any of three problems with the registration statement for the securities:

> So long as a plaintiff establishes one of the three bases for liability under these provisions—(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading—then, in a Section 11 case, the general rule [is] that an issuer's liability ... is absolute.

*Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715-716 (2d Cir. 2011) (internal citations omitted).

Plaintiffs alleged a Section 11 claim by pleading that Defendants' Registration Statements contained "material omissions" of important risks of large, rapid losses.  Under the *Blackstone* language quoted above, these material omissions allegedly both: (1) violated "affirmative legal disclosure" requirements of the Securities and Exchange Commission ("SEC")[3]; and (2) were necessary to prevent from being misleading the disclosures in Defendants' Registration Statements of the names of the ETFs, the behavior of such ETFs during

---

[3] Specifically, by failing to disclose "clearly" in the "principal risks" portion of the Prospectus for each ProShares Trust ETF the "fundamental… investment risks of the Fund using concise, straightforward and easy to understand language", Defendants allegedly violated SEC Form N-1A (Registration Statement of Open-End Management Investment Companies), General Instructions, p. 6. *See* 17 C.F.R. § 230421 ("plain English").  Complaint ¶¶ 27-28.  For the ProShares Trust II ETFs, Defendants allegedly committed similar violations in using SEC Form S-1.  *See* Item 503 of Regulation S-K, 17 C.F.R. § 229.503 ("The registrant must furnish this information in plain English ... (c) Risk factors...").

an investment holding period of longer than one day, and other aspects of the risk and rewards of investing in Defendants' ETFs. Third Amended Complaint ("TAC") at ¶¶ 18; 19-20; 22-24; 100-102; 127; 132-153; 156-157; 165-169.

Plaintiffs emphasized that Defendants' registration statements (a) contained lulling misleading graphs that depicted the potential "significant" deviation on an annual basis from perfect correlation of 0.6% to 2.2% to be representative of the disclosure that results could vary "significantly" from perfect correlation if the investments were held for more than one day, and (b) were amended after the Class Period to include corrective disclosures.

The material facts which Defendants allegedly omitted to disclose were that investors could rapidly suffer large losses, even if they were correct in their judgment about the direction of the market, by using Defendants' ETFs.[4]  The origin of this critical risk was that the undisclosed mathematical formula pursuant to which Defendants operated their new ETFs, was very vulnerable to one type of market condition. TAC at ¶¶112-126 (alleging in detail such mathematical formula and its consequences).  This type of condition was that the amount of volatility (that is, the day to day percentage change in price) of the index or other benchmark underlying the ETFs, significantly exceeded the performance of such index over any given period of time. *Id.* ¶¶15-16.  When this condition existed, an investor who had made a correct judgment about the market could nonetheless rapidly suffer large losses if the investor acted on that judgment by investing in Defendants' new ETFs.  *Id.* ¶¶17, 127, 132(d)-(e), 157 (c)-(g), 169 (c)-(g).

This type of market condition had come into existence hundreds of times between 1978

---

[4] For one example, Plaintiff Karasick rapidly lost approximately one half his investment in a few months when he was right about market direction. ¶138; see ¶¶ 130-171 generally (alleging many other paradoxical rapid, large losses).

and 2007 in the equity, gold and silver markets alone. *Id.* ¶¶ 45, 266-268.  It was materializing in

most of the indexes Defendants followed from June 2008 forward. *Id.* ¶¶ 22-24; 47(e); 52(f).

Given any scenario of inputs, Defendants' undisclosed mathematical formula told Defendants, to

the day, when such large losses would begin if the excess index volatility did not subside. *Id.* ¶¶

13-16, 25-26. In fact, the excess volatility did not subside from June 2008 forward. *Id.*  ¶¶ 6, 22-

24.  It worsened. *Id.* ¶ 18, 133-153.

But, even after these high volatility conditions had materialized and were worsening,

Defendants allegedly still continued to fail to disclose these important risks of rapid large losses.

*Id.*  ¶¶44-47; 48-52.  After the Class Period, Defendants belatedly began to disclose the

qualitative and extreme quantitative risks of excess index volatility:

(a) ". . . **investors should recognize that the degree of volatility of the underlying index can have a dramatic effect on** a fund's longer-term performance." (*see* Complaint ¶ 180);

(b) "…In periods of higher market volatility, **the volatility of the benchmark may be at least as important to the Fund's return for the period as the return of the benchmark**…" ¶179.

(c) Defendants also disclosed for the first time the effects of index volatilities between 41 and 100% (even though such levels of index volatility had been in existence for more than 15 months). However, neither during nor after the Class Period, did Defendants disclose the debilitating effects of such dangerous levels of index volatility during periods of less than one year. Compare ¶¶22-24 *with* ¶138 (Lead Plaintiff Karasick lost almost half his investment in a few months time due to such dangerous, excess index volatility conditions).

Indeed, after the Class Period, Defendants promoted index volatility to co-equal status

with the direction of the underlying index as *the co-determinants* of the outcome of an

investment in the Defendants' new ETFs:  "Daily objective leveraged funds if used properly and

in conjunction with the **investor's views on the future direction and volatility of the markets**

**can be** useful tools for investors..."[5] *Id.* ¶¶185-186.  During the Class Period, Defendants had not

---

[5] In addition to providing volatility disclosures after the Class Period, Defendants also
emphasized that holding for more than a day without (what Defendants called) rebalancing the

told investors that their ETFs could be a "useful tool" only "if used…in conjunction with the investor's views on the … volatility of the markets".  Rather, the reason for investing in Defendants' ETFs had previously been the investors' views on the direction of the index.  *Id.* ¶¶2, 5, 10, 186 (the only reason to invest was prediction on the direction of the underlying index).

Although Plaintiffs' foregoing allegations were not sufficiently accepted by the Courts to prevail, they did present fair grounds for litigation.

**D. Plaintiffs' Good Faith Basis For Their Claims Is Further Evidenced In The Complimentary Statements By The Court Of Appeals And The Extensive, Careful Consideration By That Court And This One Of Plaintiffs' Claims**

Neither this Court nor the Court of Appeals found, suggested or even intimated that Plaintiffs made any submission in this case for any improper purpose or made any allegation "so bizarre as to be frivolous."  *Tancredi v. Metropolitan Life Insurance Co*., 378 F.3d 220. 229 (2d Cir. 2004), citing *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (vacating award of attorneys' fees where allegations, although properly dismissed for failure to state a claim, "deserved and received the careful consideration of both the District Court and the Court of Appeals" and therefore were not groundless).  In *Hughes*, the Supreme Court noted that "the District Court dismissed petitioner's claims only after detailed consideration resulting in a seven–page opinion."  449 U.S. at 15 n. 13.

Here, Plaintiffs' claim not only "deserved and received the careful consideration" by this Court.  This Court actually wrote a 15-page reported opinion (twice as long as that in *Hughes*). Moreover, the treatment of this case by the Second Circuit Court of Appeals shows that

---

portfolio was subject to important risks.  For example, in the sentence quoted in the immediately preceding text above, Defendants ended such sentence with "…who want to manage their exposure to various markets and market segments and who are willing to monitor and/or periodically rebalance their portfolios." *Id*. at 410, *see* Complaint ¶¶ 185-6.

Plaintiffs' claims here were the opposite of frivolous or bad faith claims.  This case was second on the calendar for oral argument, and there was no summary affirmance during the week or weeks following argument.  On the contrary, there were numerous statements by a well prepared Bench indicating genuine uncertainty as to whether Plaintiffs or Defendants should prevail, and the Panel explicitly complimented the parties at the conclusion of oral argument.  And the Court of Appeals wrote in a 17-page reported opinion that included two substantial appendices.

The treatment of Plaintiffs' claims by the Court of Appeals affirmatively demonstrates that such claims were extremely well-founded as a matter of law.  While well-founded factually, Plaintiffs did not prevail on the ultimate proposed conclusion that the difference between what was disclosed and Defendants' corrective disclosures or other alleged specific omissions was sufficiently material to be misleading.

### 1. The Compliment Accorded To Plaintiffs And Defendants At The Conclusion Of Oral Argument

Regarding the compliment, the Honorable Richard Wesley, who chaired the Panel argument, took pains to express at the conclusion of the lively appellate argument herein as follows: "**Nicely briefed and nicely argued I might add**."  Isquith Decl. Ex. A (unofficial Transcript of Oral Argument at 36:23-24).

### 2. The Indications During Oral Argument Of Doubt As To Whether Plaintiffs Or Defendants Were Correct

Consistent with such compliment, the oral argument unofficial transcript reflects several instances where questioning from one or more Panelists showed that they were not merely engaged with the complex issues, but were actively seeking to resolve doubts concerning their determination.  For example:

●      Judge Carney pointed out the ambiguities in the registration statements by challenging Defendants' counsel as whether "the reasonable investor would understand divergence risk to mean going in opposite directions as opposed to going on the same direction at increasingly greater speed?"  Isquith Decl. Ex. A at 19:4-8;

●      Judge Wallace questioned Defendants' counsel about a contradiction between SEC Form N-1A and *Hunt v. Alliance N. Am. Gov't Income Trust, Inc*., 159 F.3d 723 (2d Cir. 1998) as to whether, if Defendants' wedge graphs were necessary to make the registration statements not misleading, they could not be incorporated by reference in the SAI.  *Id*. at 20:24 – 23:24; and

●      Judge Wesley, responding to Defendants' counsel's statement that the disclosure issue is "all just a matter of degree," *id*. at 26:7, questioned Defendants' counsel as to Plaintiffs' arguments that the disclosures describing returns over periods longer than one year may be misleading, and whether, in light of those disclosures, the registration statements should have more clearly explained "that this not to suggest that this is a long-term investment."  *Id*. at 26:15 – 27:11.

### 3.   Further Demonstrating The Non-Frivolous Nature Of Plaintiffs' Claims, The Second Circuit Clarified In Plaintiffs' Favor Interpretations Of The Law Under Section 11 In This Circuit

Consistent with the compliment and the doubts as to the outcome, in its decision, the Court of Appeals also took pains to vindicate Plaintiffs' position that disclosures required to be made in the principal risk portion of the registration statement could not be made in the Statement of Additional Information ("SAI").  *In re Proshares Trust Sec. Litig*., 728 F.3d 96, 108 & n. 6 (2d. Cir. 2013).  The Court clarified the interpretation of prior Second Circuit authority (argued for by Defendants) to make clear that such authority did **not** hold that the

contents of the SAI in that case had sufficed to disclose the pertinent facts. *Id.*, rejecting as legally unsupported Defendants' argument that *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730-31 (2d Cir. 1998) permitted reliance on information contained in the SAI in evaluating Section 11 claims.[6]

Thereby, this litigation advanced public policy and the statutory purposes of litigation to require registrants to comply with the registration requirements under the Securities Act. *In re Openwave Systems Sec. Litig.*, 528 F.Supp.2d 236, 244-45 (S.D.N.Y. 2007) (purpose of Section 11 was "to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering"), quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Plaintiffs herein furthered the objectives of Section 11 of the Securities Act by clarifying interpretations of prior Second Circuit law.

### 4. This case required the serious engagement of both courts in complex issues

Contrary to Defendants' current suggestion, this was a complex case challenging the adequacy of disclosures of the magnitude of the risks inherent in complex derivative investments in light of rapid, very substantial losses suffered on such investments.

---

[6] Both this Court and the Second Circuit accepted Plaintiffs' argument that the placement of disclosures within the registration statements was highly pertinent to the issue of adequate disclosure. On the issue of whether Defendants' disclosures may have induced investors to "buy and hold" for periods longer than one day, this Court acknowledged that the registration statements did contain "some material that attempted to explain the effects of investing . . . for a period greater than one day." 889 F.Supp.2d at 649. But the Court ruled that these disclosures did not undercut the emphasis on the daily nature of the ETFs as an investment because it appeared "nowhere near" the disclosure of the daily emphasis.

    This Court's reliance on the "placement" of the disclosures on long-term performance was unfavorable to Plaintiffs' claim, but its reasoning was quite similar to the logic underlying Plaintiffs' argument that certain disclosures had been improperly "buried" in the Statement of Additional Information ("SAI") portion of the registration statement, rather than placed in the "Principal Risks" portion of the Prospectus.

Although the Court of Appeals ultimately declined to adopt Plaintiffs' arguments that Defendants' new disclosures, made after the Class Period, were a concession of earlier disclosure inadequacies, the Court stated with "that ProShares came to use different, **arguably clearer** language." *Id.* at 109 (emphasis supplied).  Plaintiffs' arguments here again were in furtherance of the disclosure goals of the securities laws, not that made frivolously or in bad faith.

Regarding the Principal Risks portion of the Prospectus, the Court of Appeals disagreed with Plaintiffs' assertion that Defendants' disclosure that the exchange-traded funds ("ETFs") asset values may "diverge significantly" from the performance of their underlying indices failed to disclose material facts to a reasonable investor.

> Accordingly, we conclude that it is **implausible** that substituting 'actual loss' for 'diverge significantly' is a change **substantially likely to be viewed by a reasonable investor** as having **significantly altered the import of the total mix of information** ProShares made available.

728 F.3d. at 104. But such conclusion does not intimate any lack of basis to make such arguments.

### E.  In The Foregoing Context, Defendants Fail To Carry Their Burden To Show That Plaintiffs Acted In Bad Faith Or Made Frivolous Claims.

Having never previously leveled charges of frivolousness or questioned Plaintiffs' good faith, Defendants now belatedly try to carry the burden to show bad faith.  They do so by substituting faulty logic and overheated rhetoric for evidence, while ignoring the most serious allegations against Defendants, *e.g*., Defendants gave examples in the Principal Risks portion of the prospectus of 0.6%-2.2% annual deviation from perfect correlation as a representative of what "significant" deviation meant whereas the deviation could be 100% or more deviation in much less than a year.

Defendants arguments are refuted by the totality of the circumstances recounted in "A" – "D" above. Such arguments repeatedly equate incorrectly failing to prevail, with frivolousness. Thus, for example, Defendants now argue:

- "ProShares warned both textually and graphically that any divergence could be 'significant' … Plaintiffs nonetheless chose to turn a blind eye to these repeated disclosures and bring a frivolous lawsuit not grounded in fact." Def. Br. at 6-7.  This self-serving conclusion is contrary to Defendants' own characterization, noted above, that the issue of the adequacy of disclosure was "just a matter of degree."  Isquith Decl. Ex. A at 26:7.  There were fair grounds to litigate whether "significant" meant "move rapidly in the opposite direction."

- "As the Second Circuit recognized, plaintiffs' argument is completely without merit," Def. Br. at 8.  The Court of Appeals, while affirming this Court's decision, said no such thing.  728 F.3d 96 *passim*.  The Panel expressed doubts as to the outcome and complimented the Plaintiffs at oral argument.  The Decision upheld portions of Plaintiffs' arguments.

- "this Court held that plaintiffs' theory was flatly contradicted by the 'plain language of the funds' disclosures." Def. Br. at 1.  This Court made no such statement, much less so held. 889 F.Supp.2d 644, *passim*.  Failing to prevail is not remotely equal to being frivolous

- "defendants…spent nearly four years…defending themselves… against entirely baseless claims…." Def. Br. at 1.  Neither this Court nor the Court of Appeals ever suggested or intimated that Plaintiffs' claims were "baseless."  889 F.Supp.2d 644, *passim*; 728 F.3d 96, *passim*.  Twenty six pages of Court opinions and more pages of appendices strongly indicate the opposite.

- "[p]laintiffs' claims in this case were frivolous on their face, as ProShares' registration statements repeatedly disclosed the precise risk that plaintiffs claim later

materialized," Def. Br. at 4.  This again equates a failure to prevail on materiality with

frivolousness. Defendants' assertion is also contradicted by Defendants' counsel's statement to

the Court of Appeals that the issue was "just a matter of degree" as to whether the disclosures

were sufficient.  Isquith Decl. Ex. A at 26:7.

- "plaintiffs' claims were not merely 'without merit,' but were indeed so plainly

belied by the funds' clear disclosures as to be frivolous." Def. Br. at 1.  Again, neither court

reviewing these claims made any such suggestion.  889 F.Supp.2d 644, *passim*; 728 F.3d 96,

*passim*.  Instead, after careful and lengthy consideration, the Court of Appeals was

"unpersuaded".  *See* 728 F.3d at 103.  Again, the Court of Appeals rejected certain legal

arguments by Defendants, complimented the parties briefing and arguments, and took note that

Defendants' "corrective disclosures" made at the end of the Class Period used "arguably clearer

language," which would benefit subsequent investors.  728 F.3d at 109.

- "plaintiffs' cynical misuse of the Securities Act," Def. Br. at 2.  This

characterization is contrary to the compliments by the Second Circuit as well as to Plaintiffs'

success in clarifying, over Defendants' unsuccessful argument in the Court of Appeals, the

materiality of the placement of principal risk disclosures in the prospectus rather than in the SAI.

728 F.3d at 108 n. 6, 109.

- "The fact that these same investors could have made money using different

hypothetical buy and sell dates, as demonstrated in the defendants' briefing, shows the absurdity

of plaintiffs' claims." Def. Br. at 9 n.3.  No court has found, or even suggested, that any of

Plaintiffs' arguments regarding the effects of volatility on investment results was "absurd."  889

F.Supp.2d 644, *passim*; 728 F.3d 96, *passim.*  Defendants' "different dates" argument was beside

17

the point because the issue was, as Defendants later disclosed, what was the daily index volatility compared to the index performance over any given time period.

● "Plaintiffs attempt to mask their hindsight pleading … by alleging that ProShares had an obligation to provide an 'undisclosed mathematical formula'… This argument is frivolous on its face," Def. Br. at 9-10.  However, this Court carefully considered Plaintiffs' allegations and merely found them not to be plausible. 889 F.Supp.2d at 656.  This Court did not say they were "frivolous", did not award costs, and did not disparage Plaintiffs' claims.

**Point III.  Defendants Fail Even to Assert That 32 of The 35 Named     Plaintiffs Are Sophisticated Investors**

There are established standards in the Second Circuit for assessing individual liability for the payment of attorneys' fees under any of the statutory schemes.  The seminal case is *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977).  In a suit brought under the Trust Indenture Act of 1939 and the Securities Exchange Act, the district court concluded that the plaintiffs' case was without merit and awarded attorneys' fees to the defendants.  On appeal, the Court first observed that:

> Under the American Rule, every party to a case bears its own attorneys' fees, and a court will not ordinarily assess such fees except to the extent that the assessment is specifically authorized by Congress. [citations omitted]  An exception is made when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' [citations omitted]  The district court found that appellants had acted in bad faith in instituting and maintaining this action, relying on evidence that what appellants really sought was a further reduction in the conversion price and on the conduct of [one of the plaintiffs who was also the attorney] Bradley Brewer in prosecuting the case as plaintiffs' counsel.
>
> An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons. Otherwise those with colorable, albeit novel, legal claims would be deterred from testing those claims in a federal court.

*Browning*, 560 F.2d at 1087-88.  The Court went on to find that unless the entire action itself was found to have been brought in bad faith, then it was necessary to identify precisely which

portions of the action were allegedly abusive.  The Court also found that while there was

sufficient evidence in the record concerning plaintiff Brewer's misconduct while serving as an

attorney, his actions could not be attributed wholesale to the other plaintiffs, because "[b]ad faith

is personal...." *Id.* at 1088-89 (citation omitted). [7]

Defendants have made no effort whatsoever to ascribe any bad faith or frivolous actions

to any of individual Plaintiffs, except by superficially asserting that all the named plaintiffs could

be deemed sophisticated by force of their verifications attached to the Complaint.  Def. Br. at 7.

This perverts the PSLRA process.  A certification under the PSLRA addresses the QUANTITY

of losses and trades **not** the **quality** of the investors education, experience, etc.  15 U.S.C. §77z-

1(2)(A).  All that Defendants assert is that Plaintiffs are "sophisticated," which has never been

part of the standard for finding liability under Section 11(e).  There is no showing whatsoever of

any misconduct by any Plaintiffs.

Defendants mention only two Plaintiffs by name in connection with sophistication, Mark

Karasick and Wendy Rockwell-Goff.  *Id.*  Defendants conclude that because each Plaintiff

---

[7] This same rationale has been applied consistently in later Second Circuit decisions.  *See, e.g.*, *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (where Chief Judge Jacobs wrote: "But we have held that '[b]ad faith is personal' and 'may not automatically be visited' on others. [citing to *Browning*] Accordingly, absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified."); *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir. 1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity." (internal quotation marks omitted)).

In *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir. 1986) the Court also reiterated the very limited exceptions to the "American Rule": "While the 'American Rule' is that the prevailing party in federal court litigation generally cannot recover attorneys' fees, the court does have the power to award attorneys' fees to a successful litigant when his opponent has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dow Chemical*, 782 F.2d at 344 (citations omitted).  Judge Kearse then continued on to observe: "Finally, we have noted that '[b]ad faith is personal.' [citing to *Browning*] There must be clear evidence of bad faith by a particular party before attorneys' fees may be assessed against him. A finding that one defendant has acted in bad faith in conducting litigation does not justify an award of fees against a codefendant." *Id.*

supposedly made many transactions, "[s]uch experienced investors should have known to carefully read all the disclosures in ProShares' registration statements." *Id.*  Defendants provide not a single shred of further evidence as to how these Plaintiffs engaged in misconduct, or committed any acts of a frivolous nature at any time during the four years of litigation.

Ironically, the only plaintiffs that Defendants single out as potentially acting in bad faith --- Plaintiffs Karasick, Rockwell-Goff and Alexander --- are actually in the opposite position of plaintiffs Zissu or Healey in the *Zissu* and *Healey* decisions.  See pp. 2-4 *supra*.  Far from litigating to avoid their contractual obligations or to smear someone's reputation (as was found in *Zissu* and *Healey*), these three Plaintiffs joined claims in which multiple earlier investors and experienced class action law firms had previously accredited.  Various law firms actually competed to continue to prosecute on a contingent basis, i.e., only if the claims were successful would they get paid.  Again, how could these three Plaintiffs, by virtue of signing a PSLRA certification, possibly have indicated that they knew that all these law firms and the earlier Plaintiffs were acting in bad faith or without basis?

**Plaintiff Karasick.** Defendants assert without any foundation that plaintiff Karasick was a "sophisticated" investor.  The lack of evidence for this assertion dooms it to failure.  Thinking he was hedging his declines in his real estate portfolio, Plaintiff Karasick purchased Defendants' advertised "hedging" product Complaint Docket No. 188-2 at ¶138.  Plaintiff Karasick then suffered, rapid, significant, additional losses from his correct judgment that real estate prices would fall. More losses than any other Plaintiff.  How sophisticated is that?[8]  If anything, in

---

[8] To the extent Mr. Karasick could be deemed "sophisticated," the only inference would be that he is sophisticated in his real estate business and not in the ways of Wall Street, as otherwise he would have never made such a terrible investment as Defendants' SRS ETF.   As Plaintiffs made clear at oral argument, Lead Plaintiff Karasick was as much a victim of the faulty prospectus disclosures as any other class member, regardless of his sophistication in the commercial real

bringing this case, Plaintiff Karasick was seeking to obtain the benefit of Defendants advertised "hedge" **not** to avoid Plaintiff Karasick's contract obligations (as the plaintiff in Zissu did). Much less to smear someone's reputation (as the plaintiff in *Healey* did).

**Wendy Rockwell-Goff** .  Defendants claim that certain transaction data drawn from the PSLRA verification filed by named plaintiff Wendy Rockwell-Goff is sufficient to label her "sophisticated" and therefore liable as someone who engaged in frivolous and bad faith litigation.  Defendants' have never deposed Ms. Rockwell-Goff, nor do they have any understanding as to why she made her purchases or sales pursuant to any investment or hedging strategy.  They have not alleged and cannot allege a single act that Ms. Rockwell-Goff has taken in this litigation that could possibly be characterized as frivolous or in bad faith.

**Anthony Alexander**.  Defendants attempt to justify their baseless demand for fees by rehashing some of their arguments as to why their prospectus disclosures sufficiently disclosed the enormity of the risks to which investors were exposed in times of high volatility.  Def. Br. at 8-10.  In doing so, Defendants argue: "[t]hat plaintiffs' claims are overstated and frivolous is shown by their own experiences."  Def. Br. at 10.  Defendants then repeat from their Appeal Brief at 38-39 the cherry-picked example taken from named plaintiff Anthony Alexander's trading records, and from that one example extrapolate the conclusion that "plaintiffs and their

---

estate business: "the lead plaintiff Karasick, and I am sure any class member and any reasonable investor… would want to know before they choose to hedge their real estate investment or do anything else based on their notion of the direction of the fund in a few days you can lose a lot of your money if the volatility is more than the performance." MTD Oral Arg. Tr. at 49:13-19. Defendants made no effort to rebut this characterization of Mr. Karasick at the time oral argument, although they had ample opportunity to do so.  Instead, over a year and a half later, Defendants now suggest for the first time that because Mr. Karasick was conservative enough to seek what he thought was a legitimate hedging instrument to protect his commercial real estate portfolio but was, instead, defrauded out of millions of dollars, he is somehow now fairly characterized as a bad actor who acted in bad faith by seeking to vindicate his rights.

counsel should have known before filing their Complaint that their claims had no basis." *Id.* This facile conclusion ignores the fact the transaction records of the named plaintiffs consist of tens if not hundreds of thousands of transactions.  Defendants do not specify the index volatility conditions either in their example in their Opposition Brief or now in their Def. Br. for fees, as Plaintiffs have alleged all along, Defendants corrective disclosures made clear that daily index volatility is the critical undisclosed variable in the outcome.  Their example shows nothing.

**Point IV**.       **Defendants' Motion Is Untimely**

      **A.**       **Defendants Have Tactically Failed To Comply With Fed. R. Civ. P. 54 and the Local Rules of This Court**

> *Timing and Contents of the Motion.*  Unless a statute or court order provides otherwise, the motion must:
>      (i)  be filed no later than 14 days after entry of judgment;
>      (ii)  specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>      (iii)  state the amount sought or provide a fair estimate of it; and
>      (iv)  disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure .  Defendants were therefore required to move for attorney's fees within fourteen days of entry of this Court's judgment, or no later than September 26, 2012[9] because this Court entered final judgment dismissing Plaintiffs' claims on September 12, 2012.  Defendants' motion should be denied as untimely by almost thirteen months.

      **1.**       **No Statute "Provides Otherwise" to Rule 54(d)(2)(B)**

---

[9] "Given the normal presumption against the shifting of attorneys' fees, as well as the strong interest in the finality of judgments, the mandatory 14–day limit for seeking attorneys' fees should not be lightly disturbed."  *Mahmud v. Kaufmann*, 05 Civ. 08090, 2010 WL 2079556 at *4  (S.D.N.Y. Apr. 15, 2010), quoting *Slader v. Pearle Vision Inc.*, 199 F.R.D. 125, 126 (S.D.N.Y. 2001).

Defendants purport to move pursuant to Section 11(e) of the Securities Act, 11 U.S.C. § 77k(e), which contains no time limit for motions. Thus, Rule 54(d)(2)(B) sets forth the moving burdens on Defendants here, because nothing in Section 11(e) is "contrary to" or "provides otherwise" to Rule 54(d)(2)(B). *See Marx v. General Revenue Corp.*, ___ U.S. ___, 133 S.Ct. 1166, 1173-74 (2013), citing *Friedman v. Ganassi*, 853 F.2d 207, 210 (3d Cir. 1988) (holding that 15 U.S.C. § 77k(e) does not "provide otherwise" to Rule 54(d) because it does not provide an "alternative standard" for awarding taxable costs).[10]

### 2. As Defendants Can Point to No "Excusable Neglect" to Explain Their Thirteen-Month Delay, This Court Should Not "Provide Otherwise" to Rule 54(d)(2)(B)

The Second Circuit has clarified that the "order of the court" prefatory language of Rule 54(d)(2)(B) does not confer on district courts "untrammeled discretion to extend the time to file a fee motion." *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (construing "order of the court" to mean an individual judge's order extending the 14-day time limit "would threaten the concept of a uniform deadline – even at the local district level - and fly in the face of the rationales underlying the deadline"). *Tancredi* further held that "absent a statute or order of the court such as a local rule, the district court was required to find 'excusable

---

[10] The only "standard" in Section 11(e) for the exercise of the Court's discretion is the general provision that "such costs" (including the discretionary assessment of reasonable attorney's fees) "be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard." 15 U.S.C. § 77k(e). Local Civil Rule 54.1(c)(7) provides that "[a] motion for attorney fees and related nontaxable expenses shall be made within the time period prescribed by Fed. R. Civ. P. 54," *i.e.*, fourteen days after entry of judgment. *Accord, Donovan v. Flamingo Palms Villas LLC*, 2:08-cv-01675, 2013 WL 76218 at *2-3 (D.Nev. Jan.2, 2013) (motion for attorney's fees under Section 11(e), filed on fourteenth day after entry of judgment, was timely).

neglect' under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline." *Id.* at 227-28 (citation omitted).[11]

Further, by stating that they delayed filing this motion until "the deadline to seek Supreme Court review passed on October 21, 2013", Def. Mem. at 3, Defendants confirm that the timing of their motion, which is thirteen months late, was deliberate on their part and not the result of "excusable neglect."  Because Defendants' delay was occasioned by their deliberate decision to await the running of the time for any petition for a writ of certiorari, Def. Mem. at 1, 3, there is no "excusable neglect."

### 3. Because PSLRA Processes Were Employed, Defendants Should Have Sought Relief Under The PSLRA But Have Waived Their Right To Do So

Because PSLRA processes were used by the Court, Defendants should have sought any costs under that part[12] of the PSLRA which provides for consideration, "upon final adjudication of the action," of sanctions "for abusive litigation" under Rule 11 of the Federal Rules of Civil Procedure.  15 U.S.C. § 77z-1(c)(1).[13]

Defendants did not move for attorney's fees at or prior to this Court's "final adjudication" on the merits dismissing the complaint.  *See Libaire v. Kaplan*, 395 Fed. App'x 732, 735-36, 2010 WL 3894711 at *2 (2d Cir. Oct. 6, 2010) (district court's dismissal of complaint as time-

---

[11]  The court found that while many jurisdictions have local rules which "preempt" Rule 54's fourteen-day limitations period, "[t]he Southern District of New York has no such rule." *Id.* at 227.  Indeed, as noted, Local Civil Rule 54.1(c)(7) does not preempt, but expressly follows Rule 54.

[12] Indeed, Defendants cite only one (out-of-circuit) case which post-dates the enactment of the PSLRA.

[13] The PSLRA also amended the Securities Exchange Act by adding the identical language at 15 U.S.C. § 78u-4(c)(1).

barred was "final adjudication" on the merits for purposes of the PSLRA).[14]  Understandably,

neither this Court nor the Court of Appeals ever referred to Section 77z-1(c), further confirming

that this was not "abusive litigation."  Defendants' inaction constitutes a waiver of "all rights in

this case to assert that Plaintiffs did not comply with Fed.R.Civ.P. 11(b)."  *In re Charter*

*Communications, Inc. Sec. Litig*., 519 F.3d 730, 731 (8th Cir. 2008).[15]

**Conclusion**

Defendants' motion should be denied.


November 19, 2013


Respectfully submitted,

**LOVELL STEWART HALEBIAN JACOBSON LLP**

*/s/ Christopher Lovell*
Christopher Lovell
Victor E. Stewart
Gary S. Jacobson
Ian T. Stoll
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

---

[14]  Indeed, the Second Circuit has warned that the PSLRA should not discourage legitimate fee motions earlier in the litigation, "before heavy costs have accrued."  *ATSI Communications, Inc. v. The Shaar Fund, Ltd*., 579 F.3d 143, 154-55 (2d Cir. 2009).

[15]  Such waiver includes the provision for entry of Rule 11(b) findings.  While the Second Circuit has on occasion remanded for the entry of such findings by the district court, *e.g*., *Rombach v. Chang*, 355 F.3d 164, 169, 178 (2d Cir. 2004) (cross-appeal for failure to make findings); *Gurary v. Winehouse*, 190 F.3d 37, 47 (2d Cir. 1999) (motion for Rule 11 sanctions), Rule 11 issues under the PSLRA had been raised in those cases.   They were never raised here.
      Plaintiffs respectfully submit that this Court should follow the reasoning in *Charter Communications* and deem any issue requiring such findings to have been waived in these circumstances. 519 F.3d at 731.  Rule 11 was intended to curtail, rather than encourage, "satellite litigation over fees."  *Morris v. Wachovia Securities, Inc*., 448 F.3d 268, 277, 284 (4th Cir. 2006).

**ZAMANSKY & ASSOCIATES LLC**
Jacob H. Zamansky
Edward H. Glenn, Jr.
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177

*Lead Counsel for Plaintiffs*